## GREGG L. NEEL *v.* WEBB FLY SCREEN MFG. CO.

[No. 162, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*John A. Cochran* with whom were *Allers & Cochran* and *Ralph P. Dunn* on the brief, for the appellant.

*Herbert K. Kuenne,* with whom were *Hinkley & Singley* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant, successor-liquidator, of Keystone Indemnity Exchange, dissolved, sued appellee in the Superior Court of Baltimore City on September 10, 1941. The writ was issued and returned *"non est"* to the October rule day. It was renewed by the clerk without further application to the November and December, 1941 rule days, and re-

turned *"non est"* each time. It was then renewed to the January 1942 rule day on application of the plaintiff and was again returned *"non est."* The suit then lay dormant until May 14, 1945, when the plaintiff applied for a renewal of the writ which was issued and served. The defendant filed, among other pleas, a fifth plea which set up the above facts about the issuance of the writ and the final service, and stated that the final renewal was more than three years after the date of the order of assessment on which the suit was brought, and more than three years after the original filing of the suit, and more than three years after the return *"non est"* of the last previous renewal of the summons in the suit. The plea set up as a conclusion that the alleged cause of action had been discontinued and the statute of limitations barred the plaintiff's claim. The plaintiff demurred to this plea. His demurrer was overruled. The parties then entered into an agreed statement of facts, and the lower court, on this statement, entered judgment for the defendant for costs. From this judgment, plaintiff appealed.

Previous decisions of this court, interpreting suits such as this by receivers against subscribers in reciprocal or mutual insurance companies, and the application thereto of existing statutory provisions with respect to limitations of actions, are *Taggert v. Mills,* 180 Md. 302, 23 A. 2d 832; *Kelch v. Keehn,* 183 Md. 140, 36 A. 2d 544, and *Lichtenberg v. Joyce,* 183 Md. 689, 39 A. 2d 789. These cases have to do with the time of the bringing of the suit. In none of them was the question raised which is before us here. This suit was brought two days before the expiration of the statutory period of limitations applicable to this case. The bringing of the suit and the asking for the writ at that time would ordinarily arrest the running of the statute of limitations. In the case of *Hazelhurst v. Morris,* 28 Md. 67, this court, speaking through Judge Richard Grason, discussed the unreported case of *Dennison v. Trull.* In that case the writ was issued on the 28th of March, 1823, returned *"non est"* and

renewed to each succeeding term until the fourth Monday of March, in the year 1826 when service was had. A plea of limitations was filed. After further pleading, a judgment was entered against the defendant, and on appeal was affirmed. No opinion was filed, and Judge Grason determined the grounds of the affirmance from the record. He said that the legal renewal of the writ from term to term without any omissions kept the case alive and prevented the bar of limitations. Then applying the reverse of that, to the case before him he said "Where a party institutes a suit and the summons proves ineffectual to bring the defendant into court and is returned by the sheriff, in order to keep the suit alive, the summons must be regularly renewed from term to term until the defendant is taken. The omission so to renew it operates a discontinuance of the action." Following this case, it was stated in *Logan v. State,* 39 Md. 177, at page 190, "It is well settled that for the purpose of preventing the running of the statute of Limitations the impetration of the original writ is deemed the commencement of the suit, and if that proves ineffectual to bring the defendant into court and is returned by the sheriff, the suit may be kept alive by writs of summons regularly and uninterruptedly renewed from term to term until the defendant is taken." This decision was amplified by Chief Judge McSherry in *Zier v. Chesapeake Beach Railway Company,* 98 Md. 35, 56 A. 385, where he stated the general rule to be that where the period of limitations had not elapsed before the suit was brought, an amendment of the declaration without changing the cause of action does not warrant the filing of the plea of limitations, even though the statutory period has intervened between the time when the cause of action accrued and the date of making the amendment. This, however, is different when the cause of action is changed, and in the late case of *Lichtenberg v. Joyce,* 183 Md. 689, at page 697, 39 A. 2d 789; *Zier v. Chesapeake Beach Railway Company, supra,* is cited as authority for the statement,

"The period of limitations must elapse prior to the date of the filing of the suit unless the cause of action is changed."

It is not contested that this has long been the law of this State, and more specifically was the law in Baltimore City until April 3, 1894. On that date, however, Chapter 180 of the Acts of 1894 became effective. The applicable provision of that Statute is now Section 305 of Article 4 of Flack's Code of Public Local Laws of Maryland of 1930, and reads as follows: "On the return of an original writ, not executed in either of said courts, the same may be renewed, returnable to the next return day thereafter, and after two returns of any original writ not executed at the two succeeding return days after the writ is first issued, the same shall be permitted to lie dormant, renewable only on the written order of the plaintiff or his attorney of record to such future return day as the said plaintiff or his attorney may elect, and upon a further return if not executed, said writ shall be again permitted to lie, renewable only as aforesaid, the said plaintiff or his attorney having the right to renew said writ to as many subsequent return days, under the same mode of procedure as may be deemed proper until the same is executed." That section has been before this court in only one case, *Minch & Eisenbrey Co. v. Gram,* 136 Md. 122, 127, 110 A. 204, 206. In that case the lower court had quashed a writ for entering a judgment for the defendant for the costs on the ground that the defendant was improperly served with process when she was in Baltimore City only for the purpose of appearing at another trial. The point was made that the judgment should not be affirmed because the case was still pending under Section 305, and the entry should have been simply "writ quashed." The court, speaking through Judge Stockbridge, stated that the contention of the appellant in that case was that "the plaintiff would have the right to have his writ renewed from term to term, until the defendant was summoned, or as long as the plaintiff desired to have the effort continued, and that this was a valuable right as affecting a question of limitations."

The court did not determine whether this contention was correct but merely said, "This error was manifestly clerical, and too trivial upon which to base a reversal of the judgment."

The contention of the appellant is that Section 305 changes the common-law rule only to the extent that writs do not have to be reissued each term in order to relate back to the first asking, and that the case can lie dormant until such time as the plaintiff wishes to renew the writ. When the writ is served on such a renewal, appellant holds that it relates back to the time of the first asking, and if this is within the statute, the statutory period of limitations is no bar to further proceedings. He is supported in this contention by Poe on Practice, Section 67 (5th Ed.). In that section the old rule is stated as we have given it from the decisions of this court. It is said that the writ must be renewed to the succeeding term and so on without break. "An omission thus to renew will operate as a discontinuance of the action; while on the other hand, the regular renewal of the writ, from term to term, without intermission, will keep the suit alive, and prevent the running of the statute of limitations, where that defense had not accrued at the time of the impetration of the first writ." Then the Act of 1894, Chapter 180, applicable only to Baltimore City, is quoted, and the following statement is made: "The object of this act was to save the costs of constant renewal, without losing the legal effect upon the Statute of Limitations of the original suit. The Act of 1914, Chapter 240, contains a practically similar provision applicable to 'any of the Circuit Courts of the State'." This quotation is from the 5th Edition, which is the latest one in use in this State. It is noteworthy, however, that in the last edition edited by John P. Poe, himself, that is, the 3rd Edition issued in 1897, three years after this statute was passed, the same comment on the Act of 1894 is made.

The appellee contends that such construction as this would permit the case to continue forever, and that

.such a condition is contrary to all principles and prac-tices of law and equity. Prior to 1894 a lapse in the issuance of summons caused an actual discontinuance of a suit and compelled plaintiff to file a new suit. Appellee claims that the purpose of the Act of 1894 was simply to prevent an act of discontinuance, and make it unnecessary to file a new suit. This last theory, it states, is more in keeping with the early history of the law. Formerly every writ came from the King and when he died, new writs had to be issued from his successor. The statute of I Edward VI C 7, provided that the death of the King should no longer cause discontinuance but proceedings should stand good as if the same King had been living. There was then no statute of limitations, and a suit could be brought at any time. The first statute of limitations was 21 James I, Chapter 16 (Alexander's British Statutes, Coe's Edition, Vol. 2 page 599). In support of its contention, appellee cites the case of *Parker Bros. Co. v. Pennsylvania R. Company*, 242 Mich. 214, 218 N. W. 759. That case involved the construction of a rule of court passed under constitutional authority, that after the filing of an unserved writ, an alias or pluries writ might be issued, "by leave of the court upon proper showing by affidavit satisfying the court that service could not, with reasonable diligence, have been made sooner." In that case a suit was filed before the period of limitations had expired, but the writ was returned "not found." The writ was not renewed until after the period had expired. The lower court quashed it, and this was upheld by the Supreme Court construing its own rule, as follows: "But we are of the opinion that the provision in this rule for issuing an alias or pluries writ 'at any time thereafter' was not designed to abolish or circumvent the limitations otherwise applicable to an action; and that in cases such as this, wherein there is a clear break in the continuity of the action during which the statute of limitations becomes effective or the suit is otherwise barred, the right of

action is terminated." To the same general effect is *Bennett v. Met. Pub. Co.* Mo. App. 148 SW 2nd 109.

The appellee argues that appellant's construction of the act would operate to keep alive stale demands, until it would be difficult for a defendant to contest them. It cites the familiar doctrine that there should be some end to litigation. However, under the common law a demand could have been kept alive forever by renewing the writ each term. There does not seem to be much difference in principle in permitting a plaintiff to wait until such time as he finds the defendant in the jurdisdiction and can have him served. When the service is finally made, the demand will be just as stale, neither more nor less, than it would have been if the service had been renewed each term. Lack of diligence in prosecution may cause a case to be dismissed *(Washington & Rockville Ry. v. Johnson*, 127 Md. 218, 96 A. 445), but that is another question, not presented on this record. There is no provision in our statute requiring leave of court as in the Michigan case, or requiring the exercise of due diligence.

The court below followed a previous case in the Baltimore City Court where the applicable period of limitations was 12 years, and the interval between the last issuance of the writ in successive renewals and the application for the successful renewal exceeded this 12 year period. In that case the opinion was written by Judge Smith. He held that the purpose of Section 305 was to relieve the clerk of the obligation to continue indefinitely the renewal of writs and to place the responsibility for such renewals after two *non ests* upon the plaintiff by requiring a written order. He also indicated another purpose of the Act, which was to relieve the plaintiffs of a judgment of discontinuance because of a mere failure to issue to each term. He held that while the suit was lying dormant, without issue of summons, it could not be said to operate as a continuing demand. He declined to decide whether a mere break in the chain would still open the claim sued on to the running of the statute. In

the case before him, during the full statutory period of 12 years, there was no renewal of the writ of summons. Judge Tucker, in the instant case, held that if a writ is allowed to become dormant or inactive by the failure to renew, the request for renewal of the writ subsequent to such dormancy was equivalent to the commencement of a new suit. On such last mentioned renewal he held that defendant could plead limitations upon the ground that the cause of action did not acrue within the statutory period of limitations prior to the request for such renewal.

The argument that an action should not be allowed to continue forever, and that the contention made by appellant may produce that result, has persuasive elements which are in line with well established principles of justice. Nevertheless, we are unable to adopt that view. The statute, and a similar statute applicable to the counties (Code, 1939, Art. 75, Sec. 154) uses the word "dormant," which is a condition of sleeping and not of death. If the Legislature had intended to change the common law rule that the first asking for the writ arrests the running of the statute of limitations it could have said so plainly. The statute did relieve the clerk and did keep the plaintiff from having to pay the costs of a discontinuance, and did keep him from the necessity of bringing a new suit, but it did not state that the plaintiff would lose the benefit he had gained by bringing his suit in time. The Legislature did not express any such intention. It merely said that the case could lie dormant after two ineffective issues of the summons. That kept the suit alive. If it were not for the statute, the suit would be discontinued. The plain and logical deduction is that it was intended that the plaintiff could let his suit remain on the records without the regular renewal of the writ, and that in so doing, he would lose none of the rights he had previously acquired. We believe that has been the general construction by the Bar and by the Courts until the decision by Judge Smith in the Baltimore City Court in 1945, above re-

ferred to, and the decision of Judge Tucker in the case before us, following Judge Smith's decision. And the construction placed upon the act within three years of its passage by Mr. Poe, who was the most eminent authority in the State on pleading and practice is compelling. Poe's Practice has been the standard authority in this State for years. It is quoted in every *nisi prius* court and in this Court by lawyers and judges. The statement made by Mr. Poe in 1897, undoubtedly cited and followed everywhere, and unchallenged until now, presents a case of contemporaneous and long continued construction. This, added to the plain wording of the act itself, leads us to the conclusion, that, however desirable it might be to place some limitation on the time within which cases may remain dormant, we cannot now do this by belated judicial construction of this act. The judgment of the lower court will have to be reversed.

As this case was tried before the Court, and the amount due is agreed upon, we are entering a judgment for this amount in favor of the appellant.

> *Judgment reversed, judgment entered for appellant, plaintiff, against the appellee, defendant, for $310.24 and costs.*