PRISCILLA R. PIERSMA *v.* WILLIAM
L. SEITZ

[No. 224, September Term, 1970.]

*Decided November 25, 1970.*

The cause was argued before MURPHY, C.J., and ORTH and MOYLAN, JJ.

*Martin H. Freeman* for appellant.

*Townes L. Dawson* for appellee.

MURPHY, C.J., delivered the majority opinion of the Court. ORTH, J., dissents. Dissenting opinion by ORTH, J., at page 444 *infra*.

On April 19, 1965, the motor vehicles driven by appellant and appellee were involved in a collision in Prince George's County, as a result of which appellee on April 18, 1968—one day before the statute of limitations would have barred the action—sued appellant for personal injuries in the Circuit Court for Prince George's County. The summons issued for appellant was returned *non est* (moved) on April 25, 1968. By letter dated May 17, 1968, the Clerk of the Court so notified appellee's counsel and requested that he "issue written instructions to this office for purposes of re-issue and service by the Sheriff." Appellee's counsel did not respond to the Clerk's letter and the summons was not reissued. On November 14, 1968, the case was placed on the stet docket. Subsequently, in March of 1969, appellee located appellant living in Pennsylvania and service was effected upon her. Appellant pleaded limitations. That defense was held without merit and the case was eventually tried before a jury which awarded appellee judgment in the amount of $15,-000.

Appellant claims on appeal that while the suit was filed within the statutory period of limitations, the action was discontinued as barred by limitations because the appellee did not obtain two successive returns of *non est* before allowing the summons to lie dormant. He relies on *Neel v. Webb Fly Screen Mfg. Co.*, 187 Md. 34; Mary-

land Rule 112, and Rule 108 of the Rules of Court of the Seventh Judicial Circuit.

It is well settled that for the purpose of preventing the running of the statute of limitations the impetration of the original writ is deemed the commencement of the suit. *Logan v. State, Use of Nesbitt,* 39 Md. 177. At common law, where the party instituted the suit within the period of limitations but the summons proved ineffectual to bring the defendant into court, it was necessary, in order to keep the suit alive, that such summons be regularly renewed from term to term until the defendant was served; and the omission so to renew operated as a discontinuance of the action. *Hazlehurst v. Morris,* 28 Md. 67. Statutes declaratory of the common law were enacted in 1864, 1886, and 1888; "they merely established more frequent—and finally monthly—'return days' in lieu of the thrice yearly 'term days.'" *Renewal of Process and the Statute of Limitations,* 9 M.L.R. 74, 76. Subsequently, by Chapter 180 of the Acts of 1894, it was provided that in the courts of the City of Baltimore, where summons had been returned not executed, "the same *may* be renewed," and that "after two returns of any original writ not executed at the two succeeding return days after the writ is first issued, the same shall be permitted to lie dormant, * * *." Substantially identical provisions were subsequently enacted for the various Circuit Courts of the counties by Chapter 240 of the Acts of 1914.

In *Neel v. Webb Fly Screen Mfg. Co., supra,* decided in 1946, the Court of Appeals, in interpreting these statutes modifying the common law rule, held that after two ineffective issues of the summons (at two successive return days) the suit was kept alive and not barred by limitations for failure thereafter to renew the summons. The statutes interpreted in *Neel* were repealed by Chapter 399 of the Acts of 1957; they were in effect superseded by Maryland Rule 112 entitled "Renewal of Process — Dormant Process," which reads as follows:

"a. *Once as of Course, by Clerk.*
Upon the return of the summons to a party

endorsed *non est,* the same shall be renewed by the Clerk as a matter of course, returnable to the next return day.

b. *After Two Non Ests, to Lie Dormant.*

After two returns of *non est,* the summons to a party shall be permitted to lie dormant, renewable only on the written order of the plaintiff to such future return day as the plaintiff may direct.

c. *Further Renewal.*

Thereafter, upon a further return of *non est,* said summons shall again be permitted to lie dormant, renewable only as aforesaid, the said plaintiff having the right to renew said summons to as many subsequent return days, under the same mode of procedure as may be deemed proper, until the same is executed."

The requirement that the Clerk renew the summons "as a matter of course" imposes upon him, as a matter of law, a non-discretionary, wholly automatic duty, to reissue the summons so returned *non est,* returnable to the next return day. The Rule can bear no other interpretation; the Clerk's duty is not, as appellant suggests, dependent upon a request of the party seeking service of the summons.

Rule 108 of the Seventh Judicial Circuit, under which the Clerk acted in asking appellee's counsel to provide written instructions for reissuance of the summons, reads:

"The Sheriff shall promptly make his return to the Clerk of the Court. If process has not been served, the return shall state the reason why and the Clerk of Court shall forthwith notify counsel accordingly."

We see no inconsistency between the local Rule and Mary-

land Rule 112.[1] Nothing in the local Rule purports to permit the Clerk in Prince George's County to ignore the plain mandate of Rule 112 requiring that he reissue such summons "as a matter of course." That such a reissuance would likely result in another return of the summons endorsed *non est* does not mean that he can refuse to renew it unless he is provided with another address; indeed, the Rule, in requiring two successive returns of *non est* as a condition precedent to inhibit the bar of limitations, contemplates that such procedure will act as a double check on the Sheriff's performance in his initial undertaking to effect service. By directing such automatic reissuance of the summons, it was one plain purpose of Rule 112 to assure that once the suit was filed within the period of limitations, counsel need have no further concern that limitations would run against his client for failure on his part to renew the summons. In this connection, the Rule of court, unlike the common law, or the now repealed statutes, imposes the mandatory responsibility for reissuance upon the Clerk, rather than an optional responsibility upon counsel; and we think counsel should not be called upon to superintend the duties of the Clerk, but on the contrary, *in these wholly mechanical circumstances,* should be entitled to rely upon the proper performance of the Clerk's duty. Indeed, in this case, the record discloses that appellee did not have a better address for appellant than that originally supplied; that she had moved to Pennsylvania in August of 1966; and had the summons been reissued, as automatically required under the Rule, it would have been again returned *non est.*

The thrust of appellant's claim is that appellee's action "was barred by the statute of limitations when, under the Rules of Court, he did not as a matter of course request a reissue in response to the Clerk's letter of May 17, 1968." Since the reissuance was not dependent upon counsel's request therefor, and since the statute of limitations would have remained tolled had the Clerk followed the

---

1. Were there such an inconsistency, the local Rule would yield. Maryland Rule 1f.

clear mandate of the law, it would appear to be a plain perversion of the purpose and intent underlying Rule 112 to invoke the bar of limitations upon a litigant solely by reason of the neglect and omission of the Clerk to perform the wholly perfunctory duty compelled by the Rule of reissuing the summons. *Cf. Bertonazzi v. Hillman, Adm'x,* 241 Md. 361. We think Rule 112 is so structured as to permit us to hold, on these facts, and under these circumstances, that the conditions requisite to achieving a state of dormancy of process were, in effect, met in this case.

*Judgment affirmed; appellant to pay costs.*

ORTH, J., dissenting.

In *Lewis v. Germantown Insurance Company,* 251 Md. 535, 536 the Court of Appeals wondered "if the bar ever reflects upon the reasons why we have adopted and promulgated rules of practice and procedure." In *Isen et ux v. Phoenix Assurance Company of New York,* 259 Md. , it spelled out the reasons by reminding "* * * all hands that [the rules] are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' *Brown v. Fraley,* 222 Md. 480, 483 (1960)." Maryland Rule 112 b provides inter alia: "After two returns of *non est,* the summons to a party shall be permitted to lie dormant * * *."[1] That this precise rubric be followed is of the utmost significance; the dormancy *vel non* of a summons to a defendant may determine whether or not the statute of limitations may be invoked by him to bar the action against him.

An action at law shall be commenced by filing a decla-

---

1. It is then "renewable only on the written order of the plaintiff to such future return day as the plaintiff may direct." Id. "Thereafter, upon a further return of *non est,* said summons shall again be permitted to lie dormant, renewable only as aforesaid, the said plaintiff having the right to renew said summons to as many subsequent return days, under the same mode of procedure as may be deemed proper, until the same is executed." Rule 112 c.

ration, case by consent or other original pleading. Rule 140 a. The commencement of an action within the applicable period of limitations tolls the statute of limitations. See *Logan v. State, Use of Nesbitt,* 39 Md. 177, 190. But the statute is not thereby forever removed. When a summons to a defendant does not lie dormant the statute is brought back, and if the time within which the action can be brought has elapsed, the action is barred when properly challenged. This is made clear by looking to the history of the Rule.

At the common law the writ of summons had to be renewed uninterruptedly and without omission to each succeeding return day. If it was, then when it was finally executed it related back to the original asking, and if that had been within the limitation period, the bar of limitations did not lie. The Court so stated in *Logan v. State, Use of Nesbitt, supra,* at 190:

> "It is well settled that for the purpose of preventing the running of the Statute of Limitations the impetration of the original writ is deemed the commencement of the suit, and if that proves ineffectual to bring the defendant into court and is returned by the sheriff, the suit may be kept alive by writs of summons regularly and uninterruptedly renewed from term to term until the defendant is taken."

And it said in *Hazlehurst v. Morris,* 28 Md. 67 (1868), at 75, explaining its unreported case of *Dennison v. Trull* (1823):

> "The regular renewal of the writ from term to term, without any omissions, kept the action alive and prevented the bar of limitations * * *. When the plaintiff, after the first return, had his writ regularly renewed, he did all that was in his power to do, and all that was required of him by law * * *."

On the other hand, if one renewal of the writ of summons

to the next return day was omitted, there was a discontinuance of the action. Then a reissuance of the writ was a new action and if it was after the limitation period had elapsed, the statute of limitations could be applied to bar the action. The Court said in *Hazlehurst*, at 75:

> "Where a party institutes a suit and the summons proves ineffectual to bring the defendant into court and is returned by the Sheriff, in order to keep the suit alive, the summons must be regularly renewed from term to term until the defendant is taken. The omission so to renew it operates a discontinuance of the action." [2]

"Statutory enactments in 1864, 1886 and 1888 did not change the common law in this respect; they merely established more frequent—and finally monthly — 'return days' in lieu of the thrice yearly 'term days.'" *Renewal of Process and the Statute of Limitations*, 9 M.L.R. 74, 76. See Rule 102. Until 1894 there was no option for a plaintiff to skip a renewal day without suffering a discontinuance and opening the way for limitations again to run. In 1894, however, the General Assembly enacted a public local law applicable to Baltimore City. Acts 1894, Ch. 180, codified as § 160 of Art. 4 of the Code of Public Local Laws of Maryland, provided:

> "On the return of an original writ, not executed in either of said Courts [the law courts of the Supreme Bench], the same may be renewed, returnable to the next return day thereafter, and after two returns of any original writ not executed at the two succeeding return days

---

2. In *Hazlehurst* the Court expressly rejected the practice generally followed under English and American Law that did not require the issuance of successive writs between the original and final writ, but allowed them to be connected by continuances, that is entries of the award of fictitious writs. "We know of no such practice in this State, as applicable to either suits or executions, and are of the opinion that this court announced the only practice when it stated that a judgment might be kept alive for an indefinite time, by issuing a writ of *fieri facias* and having it returned, and then regularly renewing it from term to term." At 73-74.

after the writ is first issued, the same shall be permitted to lie dormant, renewable only on the written order of the plaintiff or his attorney of record to such future return day as the said plaintiff or his attorney may elect, and upon a further return of not executed, said writ shall be again permitted to lie, renewable only as aforesaid, the said plaintiff or his attorney having the right to renew said writ to as many subsequent return days, under the same mode of procedure as may be deemed proper, until the same is executed." [3]

By Ch. 240, Acts 1914, later codified in the 1951 Code as Art. 75, § 155, identical provisions were enacted applicable "to any of the Circuit Courts of the State."

In *Neel v. Webb Fly Screen Mfg. Co.*, 187 Md. 34 (1946) the Court was presented with the effect of these statutes on the common law rule. The original writ was issued and returned *non est* to the first rule day after the action was commenced. It was renewed to the next three succeeding rule days and returned *non est* each time. The suit lay dormant for over 3 years when the plaintiff applied for a renewal of the writ which was issued and served. The limitation period had then elapsed and the defendant pleaded limitations. The lower court found that if a writ is allowed to become dormant by the failure to renew after two *non ests* as provided by the statute, there was a discontinuance of the action. Therefore the request for renewal of the writ subsequent to the action becoming dormant was the equivalent to commencement of a new suit. Limitations in the meantime having intervened, the defendant could plead limitations to bar the action. The Court of Appeals did not agree. It recognized that the rule in this State, until 1894 as to Baltimore City and un-

---

3. For a discussion of "original writs", the mode of commencing actions in the ancient days in England, the development of modern forms of actions and the effect of Maryland legislation upon the old forms of pleading see *Poe on Practice* (5th Ed. 1925) §§ 54-58.

til 1914 as to the counties, was that the legal renewal of the unexecuted writ of summons from term to term without any omissions kept the case alive and prevented the bar of limitations. Or, applying the reverse, if suit was filed within the period of limitations and thereafter the period of limitations expired, an omission to renew the unexecuted writ of summons operated a discontinuance of the action and permitted the bar of limitations. 187 Md. at 37. The Court found that the statutes modified the common law rule only to the times the writ had to be renewed. Rather than the necessity to renew the writ regularly from term to term without omissions until it was executed, the statutes required that it be renewed only once to the next succeeding return day from that of the original summons. In other words, under the statutes the writs did not have to reissue each term in order to relate back to the first asking. So when an original summons was returned *non est* and its renewal to the next succeeding return day was returned *non est,* then when the writ was served on a subsequent renewal, it related back to the time of the first asking, and if this was within the limitation period, the statute of limitations was no bar to further proceedings. In so holding the Court realized that the argument that an action should not be allowed to continue forever, and that its holding may produce that result,[4] had "persuasive elements which are in line with well established principles of justice," but, it said, at 42, "Nevertheless we are unable to adopt that view." It thought that the intention of the legislature was that upon compliance with the statutes, the plaintiff could let his suit remain on the records without the regular renewal of the writ, and in so doing he would lose none of the rights he had previously acquired. It was led to the conclusion that, "however desirable it might be to place some limitations on the time within which cases may remain dormant, we cannot now do this by belated judicial

4. The "two non ests" statute was among the causes for build-up of docket load found in a 1954 survey. See *Judicial Administration in Maryland,* by Frederick W. Brune, 16 M.L.R. 93, 130.

construction of this act." At 43. The Court in *Neel* clearly affirmed the substance of the common law rule as set out in *Hazlehurst* and *Logan*. It agreed, as was stated in 2 Poe, *Pleading and Practice*, 5th Ed., § 67, that the object of the statutes was "to save the costs of constant renewal, without losing the legal effect upon the Statute of Limitations of the original suit." All the statutes did as a requisite to the keeping alive of the suit, was to ease the common law rule by substituting two returns of any original writ not executed at the two succeeding return days after the writ is first issued, for the common law requirement that the original writ returned unexecuted had to be renewed to the next succeeding term, and so on, without break, until the defendant was found and summoned. But they went no further. It is patent that the summons would not be permitted to lie dormant if the original writ were not renewed to the next succeeding return day and returned "non est." Such lack of compliance with the statutory requirements operated as a discontinuance of the action. Code (1951), Art. 75, § 155 was repealed by Acts 1957, Ch. 399, § 1.[5] The Editor of the Maryland Rules in a note to Rule 112 observed that the Rule stated in substance the provisions of the repealed statute and stated: "It would seem that no change was intended." If the Rule intended no change from the substantive statutory provisions, the construction of the statute in *Neel* controls the construction of the Rule. Thus it is clear that under the Rule, as under the statute, when the renewal to the next succeeding return day of the original unexecuted summons is unexecuted, it lies dormant. No discontinuance is effected by the failure thereafter to renew the summons on succeeding return days and when the summons is subsequently renewed it relates back to the original summons. The result is that when there is compliance with the Rule the statute of limitations acts

---

5. However, Art. 4, § 160 of the Code of Public Local Laws has not been expressly repealed. It appears, as enacted in 1894, as § 22-64 *Code of Public Local Laws of Baltimore City*, Everstine (1969).

as no bar to the action even though the limitation period expired between the original summons and the finally executed summons.

Although it seemed to the Editor that no change from the statute was intended by Rule 112, there is a distinction between the statute and the Rule. Each of the public local and the general statute provided that on the return of the original writ [6] not executed, "* * * *the same may be renewed,* returnable to the next return day thereafter * * *." [7] (emphasis supplied) But Rule 112a provides: "Upon the return of the summons to a party endorsed *non est,* the same shall be renewed by the Clerk as a matter of course, returnable to the next return day." The statutes may have imposed no obligation on the Clerk *sua sponte* to renew the unexecuted original writ; it appears that the Rule does. The question is what is the effect when the Clerk does not renew the unexecuted summons as provided in § a of the Rule and it is in the resolution of this question that the majority of the panel and I part.

Here the action at law in tort was commenced by the filing of a declaration in the Circuit Court for Prince George's County by William L. Seitz, appellee-plaintiff, one day before it would have been barred by the statute of limitations.[8] The name of the defendant was given in

---

6. The present rules provide as to the issuance of the original writ:

"When an action is commenced, the clerk shall forthwith issue as of course a summons thereon against each defendant in the State without the necessity of any prayer therefor, and deliver it to the sheriff for service. Rule 103 b. "The summons shall be made returnable at the first return day after its issuance, or if the plaintiff so directs, at the second return day after its issuance." Rule 103 c.

7. It was after the two returns of any original writ not executed that it was permitted to lie dormant.

8. As the suit was a claim of damages for personal injuries arising from alleged negligent acts, the limitation period was three years. "All actions * * * on the case * * * shall be commenced, sued or issued within three years from the time the cause of action accrued * * *." Code, Art. 57, § 1. According to the allegations in the declaration filed 18 April 1968 the cause of action accrued on 19 April 1965 when an automobile driven in negligent manner by appellant struck an automobile driven with due care by appellee.

the declaration as Pricilla R. Crosby and her address as 5409-D Riverdale Road, Riverdale, Maryland. A summons directed to her was issued by the Clerk on 18 April 1968, returnable on the first Monday in May, the first return day after its issuance. Rule 102. The Sheriff returned it on 25 April endorsed "Non Est" and with the notation "Pricilla Crosby Moved." Rule 108 of the Rules of Court of the Seventh Judicial Circuit provides:

> "The Sheriff shall promptly make his return to the Clerk of the Court. If process has not been served, the return shall state the reason why and the Clerk of Court shall forthwith notify counsel accordingly."

The Clerk did not renew the summons but notified appellee's counsel by letter dated 17 May that process had not been served and informed him why it had not been served. He stated in the letter: "You will please issue written instructions to this office for purpose of reissue and service by the Sheriff." But there were no written instructions to the Clerk or request to reissue the summons until 18 March 1969. Then for the first time, appellee's counsel, by letter, requested the Clerk to "reissue service on Pricilla R. Crosby, also known as Pricilla R. Crosby Piersma, at new address: 606 Gulph Road, Apt. 108, King of Prussia, Pennsylvania. She is now married to Dr. Bernard J. Piersma." The Clerk issued a writ of summons to the Sheriff of Anne Arundel County on 20 March 1969 for service on the Secretary of State, Code, Art. 66½, § 115, and it was served on that official.[9] In this factual posture — the commencement of the action one day before it would have been barred by limitations, by a declaration which gave the maiden name rather than the married name of the defendant and stated as her address a place from

---

9. On 4 November 1968 the case had been placed on the stet docket. Upon petition of appellee filed 26 March 1969 and order the same date, it was removed from the stet docket and appellant's name was amended to read "Priscilla R. Crosby Also Known As Priscilla R. Piersma."

which, according to appellee's statement in his brief, she had moved in August 1966, almost two years before, the notification by the Clerk of appellee's counsel that the original summons had been returned *non est* in ample time for it to be reissued returnable at the next return day, the failure to comply with the Clerk's request for written instructions for the purposes of reissue of the summons and service by the Sheriff for some 10 months— the majority find that appellee did all that was required of him under Rule 112 because it was the Clerk's sole obligation to reissue the summons. They then hold that since it was the Clerk's duty to issue the renewal to the next return day, the fact that he did not do so was immaterial. They consider what he should have done as the equivalent of what was done, that is since he should have renewed the summons it shall be considered as renewed and returned *non est*. Only by finding that what should have been done was in fact done, in the face of uncontradicted evidence that it was in fact not done, can it be considered that there were the two *non ests* required by the rule to permit the summons to lie dormant. And only if the summons is permitted to lie dormant can the statute of limitations remain tolled so as not to bar the action.[10] To me it is an inescapable conclusion that a summons to a party is permitted to lie dormant *only* after the two returns of *non est* as prescribed. When there are not two such *non ests* the common law rule takes over. I find this to be the only manner in which the unambiguous language of the former statute and the present Rule can be construed; there is simply no indication that the legislature in enacting the law and the Court of Appeals in adopting the Rule intended otherwise. No alternatives are given; no provisos are set out; no exceptions are made. And I think that this is the clear import of *Neel,*

---

10. We note that appellant raised the point below that the action was barred by the statute of limitations by pleading it specially, Rule 342, c, 2 (a), by making it the basis of a motion for summary judgment, and by asserting it as a ground for a motion for a directed verdict at trial on the general issue, all to no avail.

which applied *Logan* and *Hazlehurst;* I believe that their holdings, findings, and rationale permit no other result.[11]

Nor do I believe that the Rule can be construed in terms of assessment of blame for failure to comply with its provisions. And if degree of blame is to be considered, certainly appellant in no way contributed to the failure to obtain two *non ests* or to the failure to serve her. There is nothing in the record to indicate that she was attempting to evade service, or, in fact, that she had any knowledge of the proceedings until service was had through the Secretary of State in March 1969. On the other hand appellee not only brought the action one day before it would have been barred but knew that the original summons had been returned unexecuted and ignored a specific request to give the Clerk instructions for its reissuance which he could have done and obtained compliance with the Rule. I note that Rule 103 d provides: "Upon request of the plaintiff an additional summons shall issue against any defendant," and so appellee had authority to request an additional summons. I simply cannot read into the Rule under the circumstances in this case the sanction imposed by the majority.

The general purpose of a statute of limitations is to insure prompt assertion of a claim. Many states have saving statutes to prevent perversion of the policy and purpose of a statute of limitations. These statutes provide that if an action is "commenced" within good time but is dismissed by some technicality unrelated to the merits, for example, that the venue was improper or the court lacked jurisdiction, "a new action may be brought within a certain specified time, usually six months or a year, and that the second action is to be treated as a continuation of the first, the effect being that the original statute of limitations is tolled by the first suit, ineffectual to avoid dismissal as it was." *Bertonazzi v. Hillman, Admx.,*

---

11. It seems that the Court of Appeals in *Gore v. Jarrett,* 192 Md. 513, 516, determined that an appeal was timely taken because of what a clerk in fact did rather than what he was supposed to do and in fact neglected to do.

241 Md. 361, 368. But such statutes are "designed to insure the *diligent suitor* the right to a hearing in court till he reaches a judgment on the merits. * * * The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law. * * * A suitor who invokes in good faith the aid of a court of justice, and *who initiates a proceeding by the service of process,* must be held to have commenced an action within the meaning of this statute [identical in substance with its prototype, the English act of 1623, 21 Jac. 1 c. 16, § 4], though he has mistaken his forum." (emphasis supplied) *Gaines v. City of New York,* 109 N. E. 594, 596, quoted with approval in *Bertonazzi* at 369. Maryland has not enacted such a savings statute [12] but even such a statute would not benefit appellee here, for I cannot say in any event that he was a diligent suitor who gave timely notice to his adversary.

Mr. Poe was not unaware of the possibility of the Clerk not renewing an unexecuted writ. Although he did not consider the matter in the light of a provision that the Clerk reissue the summons "as a matter of course," he did consider it with the idea that it was perhaps the duty of the Clerk to renew the writ without instructions from plaintiff's attorney. He felt: "[I]t is obviously also encumbent upon the attorney of the plaintiff to see that such duty is performed, in order to guard against the possibility of its being neglected, and the consequent injury

---

12. The Court of Appeals in *Bertonazzi,* at 370-371, said that the fourth section of the English limitation act, 21 Jac. 1 c. 16, § 4, became part of the law of Maryland. "Kilty, in his Report of English Statutes 238 (1811), classified it as 'applicable and proper to be incorporated' into the law of the State, as did 2 Alexander's British Statutes 600 (2 ed. 1912)." It did not hold that the statute controlled or was applicable to the case before it but felt that it followed its spirit. I feel that in its factual posture the instant case does not fall within the literal terms of § 4, or as it was liberally construed by the English Courts, nor, since it is readily distinguishable factually from *Bertonazzi* is it within the spirit of § 4.

to the plaintiff." 2 Poe, *Pleading and Practice*, 5th Ed., § 67. That the duty of the Clerk here may have been ministerial, or "mechanical" or "wholly perfunctory" did not divorce appellee or his attorney from all responsibility to see that the renewal of the summons was timely issued or supply, by the mere fact that the Clerk did not perform that duty, the two returns of *non est* required by the Rule to permit the summons to lie dormant. If Rule 112 is to be eased to permit a summons to lie dormant for other reasons than now prescribed, or if the rule of law established in this State with respect to the applicability of the statute of limitations is to be changed, it must be under the rule making power of the Court of Appeals or by legislative action. It may not be, as the majority have done, by our belated judicial fiat.

The majority have no need to consider the other reasons advanced by appellee as to why his action should not be barred by limitations. I have considered them and find them without merit.

### 1) *The Amendment of the Declaration*

It is correct that as the period of limitations had not elapsed when the action was commenced, the amendment of the declaration with respect to appellant's name would not warrant the filing of a plea of limitations even though the statutory period intervened between the time the cause of action accrued and the time of making the amendment, for the amendment did not change the cause of action. See *Lichtenberg v. Joyce*, 183 Md. 689. But appellee could not resurrect an action that had died, as this one had, by amending the declaration as to the name of the defendant. That is to say, although the amendment may ordinarily have related back to the original declaration, at the time the amendment was prayed and ordered there had already been a discontinuance of the action. In that circumstance the amendment could not prevent "the defense of the statute of limitations from being a bar to the suit."

## 2) *The Stet*

According to the docket entries the case was stetted about six months after the original summons had been returned *non est*. Upon petition of appellee it was ordered removed from the "stet docket" on 26 March 1969. Appellee claims that the order reinstating the case for disposition prevented a valid plea of limitations. But in my opinion there had been a discontinuance of the action before the case was stetted and neither the placing of the case on the stet docket nor the removing it therefrom could resurrect it or isolate it from the effect of the statute of limitations.

## 3) *The Filing of the Suit within the Limitations Period*

Appellee urges that the mere filing of the suit within the period of limitations was all that was required to prevent forever the effect of the statute of limitations. The majority and I are in accord that this was not the common law rule and is not now the rule in this jurisdiction. While the commencement of an action within the applicable period of limitations tolls the statute, see *Vincent v. Palmer*, 179 Md. 365, 374, when there is a discontinuance of the action, the statute again runs and may serve as a bar to a new action brought.

## 4) *The Absconding Debtor Statute*

Code, Art. 57, § 4 provides in pertinent part that no person shall have the benefit of any limitation of action who absents himself from Maryland "after any debt contracted whereby the creditor may be at an uncertainty of finding out such person or his effects." Appellee argues that this statute prevented appellant from pleading limitations. The statute is not applicable. There was no debt here contracted. And see *Mason v. Union Mills Paper Mfg. Co.*, 81 Md. 446.

## 5) *The Failure to Take an Immediate Appeal from the Denial of the Motion for Summary Judgment*

Appellant did not lose her right to appellate review of

the denial of the motion for summary judgment when she did not take an immediate appeal from the order of denial. The order was *pro forma* and such appeal would have been treated by us as prematurely taken and dismissed. Rule 1035 a 1. And while the matter may have been considered by the trial court as *res adjudicata* after its order of denial, the propriety of the order was subject to review by this Court after the judgment against appellant on trial of the merits became absolute, timely appeal taken and the question properly presented on appeal, as was here done.

I would hold that the lower court erred in denying appellant's motion for summary judgment and reverse the judgment in favor of appellee.

I agree with the majority that Rule 108 of the Seventh Judicial Circuit is not inconsistent with Maryland Rule 112. And I would emphatically suggest that henceforth the Clerk of the Circuit Court for Prince George's County, not only comply with the Seventh Judicial Circuit's Rule 108 but also with Maryland Rule 112a so that when the original summons issued by him is returned *non est,* he renew it, returnable to the next return day, "as a matter of course", without the necessity of any prayer therefor, or request or instruction or otherwise from the plaintiff or the plaintiff's attorney. And if the clerks of the other Circuit Courts of Maryland and the clerks of the various courts of the Supreme Bench of Baltimore City are not now complying with Rule 112a, it is suggested that they do so forthwith.