502 A.2d 1125

**Robert Pendelton BAILEY, Jr. et al.**

v.

**Doris Lee STOUTER.**

**No. 557, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 16, 1986.

Certiorari Denied May 21, 1986.

Hillel Abrams of Silver Spring, for appellant.

Lawrence E. Finegan (Rosenstock, Burgee & Welty, P.A., on brief), Frederick, for appellee.

Argued before WILNER, ALPERT and ROBERT M. BELL, JJ.

WILNER, Judge.

The dispute before us concerns a 96-acre tract of improved property in Frederick County that was sold at a tax

sale in November, 1980. At issue is the validity of the subsequent decree of the Circuit Court for that county foreclosing the former owners' statutory right of redemption.

The property was once owned by Philip L. Culler, who died in 1954. He left the bulk of his estate, including the property in question, to his daughter Pearl C. Bailey (Pearl) and two of his grandchildren, James T. Bailey (James) and Philip R. Bailey (Philip), in trust. Upon the death of certain life beneficiaries, the income from the trust was to be paid to Culler's grandchildren until the youngest of them turned 40, at which time the trust estate was to be liquidated and distributed to the grandchildren. In 1957, upon the trustees' petition, the Circuit Court for Frederick County, in Equity No. 18,779, assumed jurisdiction over the trust.

Pearl died in March, 1978, leaving James and Philip as the surviving trustees. In August, 1978, they and the other grandchildren petitioned the court to appoint Lulu Bailey Sween (Lulu), who was one of the grandchildren, as a substitute trustee. The petition gave no addresses for any of the grandchildren, but it did reveal the married names of three of them—Lulu, Alice Bailey Dunberger, and Janice Bailey McLeaf. It also, of course, revealed the fact that Pearl had died. The petition was denied, and so James and Philip remained the sole trustees and thus the sole legal owners of the property.

In apparent neglect of their fiduciary responsibilities, James and Philip failed to pay the taxes on the property, and so, as we said, the property was sold at a tax sale in November, 1980. Appellee purchased the property at that sale for $4,250. In December, 1981, James and Philip, as trustees, attempted to redeem the property, but the check they sent to the county treasurer "bounced."

In January, 1982, appellee filed a bill of complaint to foreclose the owners' right of redemption. Named as defendants, in addition to the county treasurer and one life beneficiary, were Pearl, James Philip, the other six grand-

children, and "all persons having or claiming to have an interest in the property described herein."

The county tax records at that time showed the owners of the property to be "Pearl C. Bailey, et al., c/o Kenneth Andrew Bailey, P.O. Box 71, Leonardtown, Maryland." Notwithstanding, appellee issued no summons for either James or Philip at that address. Instead, she had summonses issued for James at an address stated to be in Washington, D.C. (409 79th Avenue, Yorkshire Knolls, Seat Pleasant) and for Philip at an address in Frederick (413 Biggs Avenue). A summons was issued for Kenneth Andrew Bailey (Kenneth), who was also one of the grandchildren, at "Leonardtown, Maryland." Everyone else, except the county treasurer, who was served with process, was proceeded against exclusively through publication. In an affidavit made part of the bill of complaint, appellee's trial counsel asserted that he had searched the land records, the records of the register of wills, "and of the Courts of Law and Equity of Frederick County" and that, as a result of that search, he had been "unable to ascertain any information as to the present addresses of those respondents whose whereabouts are listed as unknown." The published notice identified Lulu Sween, Alice Dunberger, and Janice McLeaf by their birth name, Bailey.

The summons for James was sent to the D.C. address by registered mail. It was returned undelivered. The summons for Philip was returned by the sheriff *non est* with the notation "no one heard of this subject at this address." Although under former Md.Rule 112a, then in effect, it was the duty of the clerk, "as a matter of course," to reissue the summons, that was not done. Claiming to have no further information as to the whereabouts of James or Philip, appellee relied upon the notice by publication, which included James and Philip among the named defendants, to provide appropriate notice. Kenneth was personally served in Leonardtown. Aside from the county treasurer, he was the only defendant so served.

No one answered the bill of complaint, and so, on April 13, 1982, the court entered a final decree foreclosing the right of redemption and directing the Collector of Taxes to issue a deed to appellee. The deed was issued and recorded.

Lulu apparently learned of the tax sale in December, 1981, but did nothing positive to redeem the property. At some point in the spring of 1982, she learned about the foreclosure proceeding; on the day after the foreclosure decree was entered, she contacted counsel to see if redemption was still possible. In June, 1982, she and five other grandchildren filed a petition in No. 18,779 (the trust proceeding) to remove James and Philip as trustees and to substitute in their place two of their number (Lulu and Robert P. Bailey, Jr.) and their attorney Ralph L. Gastley, Jr. One of the grounds averred in the petition was the loss of the property at issue here. By decree dated September 16, 1982, the court removed James and Philip and made the requested substitute appointments.

On December 7, 1982, the new trustees, appellants here, commenced this proceeding with a motion to vacate the foreclosure decree and set aside the deed. They contended that appellee had failed to obtain proper service on James and Philip and had not given proper notice to the other persons interested in the property. As a result, they claimed that the court lacked jurisdiction to enter the decree. Specifically, they complained that (1) no process was issued for James or Philip at the address appearing in the county tax records, (2) James, in fact, was a Maryland resident and should have been proceeded against as such, (3) Philip should not have been proceeded against by publication in the absence of a second return *non est* or an affidavit that he was attempting to evade service, and (4) the other remaindermen were "necessary parties," no attempt was made to effect personal service on them, and an insufficient attempt was made to discover their "whereabouts."

After an evidentiary hearing, the court found that neither the service nor the notice was improper and therefore denied appellants' motion. This appeal followed, in which essentially the same questions are raised.

### (1) *The Remaindermen*

At the hearing in the Circuit Court, appellants appeared to concede that the non-trustee remaindermen (*i.e.*, everyone but James and Philip) had been properly notified through publication. In this appeal, their only complaint as to those persons goes to appellee's failure to use the marital surnames of Lulu, Alice, and Janice. We find no merit in that complaint (assuming, *arguendo*, that it was not waived).

Appellants rely primarily on two old cases for the proposition that notice by publication is insufficient as to a married woman when it identifies her by her birth name—*Morris v. Tracy*, 58 Kan. 137, 48 P. 571 (1897), and *Freeman v. Hawkins*, 77 Tex. 498, 14 S.W. 364 (1890). Both cases did indeed so hold. Aside from the fact that there are contrary decisions (*see, for example, Pooler v. Hyne*, 213 Fed. 154 (7th Cir.1914), *cert. denied* 238 U.S. 620, 35 S.Ct. 603, 59 L.Ed. 1493 (1915), and the Indiana cases cited therein), it is important to recall that, when those cases were decided, a married woman took her husband's surname *by law*. *See* Annot., *Correct name of married woman*, 35 A.L.R. 417 (1925). That was the stated basis for the holding in *Freeman v. Hawkins* and no doubt served *sub silentio* as the basis for *Morris v. Tracy* as well.

The law has changed. Married women are not now required to take their husband's surname and many, in fact, do not do so. The legal underpinning of those cases therefore no longer exists, and their precedential value is, at best, minimal.

The underlying rationale of those cases is not entirely lost, however. To a large extent, notice by publication is a fiction. *See* 58 Am.Jur.2d *Notice* § 6 (1971); 66 C.J.S. *Notice* § 6 (1950). Without substantial evidence in support,

it rests on the assumption that ordinary people regularly peruse the legal notice columns in the hundreds or thousands of newspapers published throughout the country looking for notices that may pertain to them. It is, of course, a necessary fiction, for it allows courts to proceed in cases where necessary parties cannot otherwise be given the constitutionally required notice. In the somewhat dubious expectation that the intended person might actually be in a position to see the notice, the idea is, first, to get his attention by listing his proper name and then, having attracted his attention, to give him fair and adequate information about the proceeding. To achieve the former purpose in the case of a married woman, the notice should, if possible, use the name that she uses. If appellee (through counsel) had indeed searched the records of the Circuit Court as (through counsel) she affirmed she did, she would have discovered the marital surnames apparently used by Lulu, Alice, and Janice. Those are the names that should have been used in the notice.

■ That is not to say, however, that appellee's failure to use the marital surnames in the published notice deprived the court of jurisdiction. We are not prepared to conclude as a matter of *law* that a married woman who adopts her husband's surname would not be sufficiently attracted to a published notice using her birth name at least to read the notice, and there is nothing in the record before us to indicate, as a matter of *fact*, that that occurred in this case. Indeed, the record here indicates that each of the three women actually retained her birth name, Bailey, as part of her marital name, as many married women customarily do. Accordingly, while we repeat that the notice should state the name customarily used by the person to whom the notice is addressed and warn that the failure to state that name may, under some circumstances, cause the notice to be fatally defective, we do not believe that the notice in this case was jurisdictionally deficient.

## (2) *The Trustees*

That brings us to the more significant question of whether proper notice was given to the legal owners of the property—James and Philip. We conclude that it was not.

As owners of the property, James and Philip were necessary parties to the foreclosure proceeding. Md.Code Ann. art. 81, § 103(a); former Md.Rule 205b. Art. 81, § 106(a), captioned "Service of notice," provides, in relevant part, that,

> "Upon the filing of the bill of complaint [to foreclose the right of redemption], the court shall issue its subpoena for all parties defendant named in the said bill who are residents of this State and upon such bill the same process by summons, notice or otherwise shall be had to procure the answer and appearance of all such defendants as is had in other cases in equity.... Provided that in all cases where two successive subpoenas against a named defendant have been returned non est or upon the return of one subpoena non est and proof by affidavit that a defendant has kept out of the way or has secreted himself to avoid service of the subpoena, or whose whereabouts may be unknown, such defendant shall be deemed to be served by the publication issuing under the provisions of the succeeding sections as if he were a non-resident."

The mention of service by publication has reference to § 107(a), which requires the court, contemporaneously with the issuance of the subpoena pursuant to § 106, to order publication of a notice of the proceeding, directed to "all parties defendant, known and unknown...." The notice required by § 107(a) is not, however, a *substitute* for the notice required by § 106(a); it is a supplement to it. This was made clear in *Master v. Master,* 223 Md. 618, 166 A.2d 251 (1960), where, as here, a co-owner of the property (a wife) who was a Maryland resident complained about the lack of personal service of the bill to foreclose her right of redemption. At 624, 166 A.2d 251, the Court held:

"The order of publication was in no way constructive notice to the wife. A proceeding to foreclose an equity of redemption in a tax sale is a proceeding *in rem* or *quasi in rem* and the Legislature, without affronting due process, could have provided that all interested parties, including residents, were to be brought before the court by publication. ... The Legislature, however, chose to require in Code (1957), Art. 81, Secs. 106 and 107, *that residents of the State must be personally served by subpoenas and that only if there were returns of non est on two successive subpoenas against a named resident defendant, or one non est and an affidavit of evasion of service, could such a defendant be treated as a nonresident and served by publication.* Since the wife was admittedly a resident, living at an address known to the complainants, and was not served, the court had neither the right nor the power to proceed against her interest in the property, and the order of publication was without effect as to it."

(Emphasis added; citations omitted.) *See also Smith v. Watner*, 256 Md. 400, 260 A.2d 341 (1970).

James and Philip were Maryland residents. Both lived in St. Mary's County—James in the town of Hollywood, which appears to be about seven miles from Leonardtown, and Philip in the town of Bushwood, which appears to be about ten miles from Leonardtown. The record either shows directly or lends a fair inference to the fact that other notices sent to the Leonardtown post office address shown in the tax records were indeed received by one of the grandchildren—Robert Bailey, who then delivered these notices to Kenneth. There is nothing in the record to establish that, had appellee attempted service, either by sheriff or by mail, in Leonardtown, it would not have gotten to James and Philip.[1]

---

1. We note that Kenneth, who lived in Leonardtown, was personally served with a summons addressed simply to Leonardtown, Maryland.

We do not know why appellee chose to ignore the Leonardtown address shown in the tax record. In her brief she asserts that trial counsel's search of the court records revealed "newer, more current addresses for the surviving trustees." There is nothing in the record to support that assertion; indeed, in light of trial counsel's naming of Pearl as a defendant and his use of the birth names of Lulu, Alice, and Janice, the diligence of his search of the court records is questionable. Even assuming that counsel initially acted in good faith, in the reasonable belief that he had discovered more current addresses, the reasonableness of that belief vanished when the notice mailed to James in the District of Columbia[2] was returned undelivered and the summons sent to Philip in Frederick was returned *non est* —"no one heard of this subject at this address." At that point, it was incumbent upon him, at the very least, to try the Leonardtown address. He had no right to continue to ignore that address and simply assume that their whereabouts were unknown. Publication is not the preferred method of giving notice to a Maryland resident. It is to be used only when personal service proves beyond the plaintiff's ability to effect, and the record simply does not show that the have been the case here. By failing to take any other steps to assure personal service on James and Philip, appellee violated both the purpose and letter of § 106(a) and then-effective Md.Rule 105b.

Rule 105, dealing with service of process in *in rem* or *quasi in rem* actions, provided in § b.1. that an order of publication was permissible when the whereabouts of the defendant were unknown "and the plaintiff files a statement under oath or produces other sworn evidence setting forth a circumstantial account of the efforts made to locate the defendant which satisfies the court that reasonable

---

**2.** Counsel erred a second time in addressing the notice to the District of Columbia. Seat Pleasant is in Maryland. Although at one time, mail to Seat Pleasant was delivered from a D.C. Post Office, that practice was discontinued more than a year before the filing of appellee's bill.

efforts to locate the defendant have been made in good faith...." Merely stating that counsel has searched the land records and other records of the court does not appear to us to be a "circumstantial account of the efforts made to locate the defendant" under the circumstances of this case. At the very least, counsel should have explained why he ignored the Leonardtown address shown in the county tax records.

Although appellee (through counsel) may have thought that James resided in the District of Columbia, she knew that Philip was a Maryland resident, for she directed his summons to Frederick. Section 106(a) makes clear, as stated in *Master*, that when dealing with a Maryland resident, the petitioner may not rely on notice by publication unless the respondent's whereabouts are unknown, the summons has *twice* been returned *non est*, or there is evidence, memorialized in an affidavit, that the respondent has been evading service. None of those conditions is met here. Appellee does not now contend that Philip's whereabouts were unknown, and she never did contend that Philip was attempting to evade service of process. Citing *Piersma v. Seitz*, 10 Md.App. 439, 271 A.2d 199 (1970), *aff'd per curiam* 262 Md. 61, 276 A.2d 666 (1971),[3] appellee seeks to excuse her omission to obtain a second *non est* by laying the blame on the clerk, who inexplicably failed to reissue the summons as of course. *Piersma* is of no help, for it dealt with an entirely different circumstance.

In *Piersma*, the plaintiff filed suit one day before the statute of limitations would have barred his claim; the summons was returned *non est* and the plaintiff failed to direct the clerk to reissue it. The defendant, who was ultimately served, argued that the action was barred because the plaintiff failed to obtain two successive returns of *non est* before allowing the summons to lie dormant, as

---

**3.** In its *per curiam* order the Court of Appeals adopted the majority opinion by then Chief Judge Murphy of the Court of Special Appeals, now Chief Judge of the Court of Appeals.

was required by Rule 112b. The appellate Courts concluded that *"in these wholly mechanical circumstances,"* the plaintiff was entitled to rely on the "proper performance of the Clerk's duty" to reissue the summons "as a matter of course," and that the action was not barred simply because the plaintiff failed to direct the clerk to do what the law commanded him to do. 10 Md.App. at 443, 271 A.2d 199 (emphasis in original).

It is one thing to say that a party is not obliged to direct the clerk to perform a ministerial duty having little or no significance beyond the purely procedural question of when a summons will be permitted to lie dormant; it is quite another to dispense entirely with a statutorily required form of notice because the clerk fails in his duty. *Piersma* does not govern the latter situation.

What we have, then, is a case in which the beneficial owners were given proper notice by publication but the legal owners—the two trustees—were not. Unlike *Master v. Master, supra,* and *Smith v. Watner, supra,* however, the complaint about lack of service is not being made by the individuals—James and Philip—but by others who have since stepped into their shoes. What is the effect of that?

Art. 81, § 113 provides that an application to reopen a final decree of foreclosure may not be "entertained" "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose...." The actual holding in *Master,* confirmed in *Smith,* was that, because the wife was not personally served, as the statute required, "the court had neither the right *nor the power* to proceed against her interest in the property and the order of publication was without effect as to it." *Master,* 223 Md. at 624, 166 A.2d 251 (emphasis added). Although, by reason of other circumstances in the factual setting in *Master,* the Court held that there was fraud in the conduct of the proceeding, the aforequoted language used by the Court coupled with the Court's reference in n. 1 (at 625, 166 A.2d 251) to *Brashears v. Collison,* 207 Md. 339, 115 A.2d 289

(1955), suggests that there was also a lack of jurisdiction. That inference was indeed drawn in *Smith v. Watner.* See especially the discussion at 405–09 of 256 Md., 260 A.2d 341, where the Court distinguished *Jannenga v. Johnson,* 243 Md. 1, 220 A.2d 89 (1966), declared that a finding of fraud was unnecessary for *Master* to apply, and concluded that, where a resident party is not served in the manner required by § 106, the court "lack[s] jurisdiction to decree a foreclosure." *Id.,* 256 Md., 405, 260 A.2d 341.

Upon this analysis, we conclude that, by reason of appellee's failure to comply with § 106(a) as to James and Philip, the court had "neither the right nor the power" to proceed against their interest in the property. That interest, of course, is the very interest now possessed by appellants as successor trustees. It does not matter, then, that James and Philip are not the complaining parties; it matters only that the trustees, whose interest is involved, are the complainants. The decree of foreclosure was jurisdictionally deficient and must be vacated.[4] The case will be remanded for such further proceedings as may be necessary.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.

---

**4.** As a last ground of defense, appellee argues that appellants are estopped from bringing this proceeding because of their reliance on the loss of this property in their effort to remove James and Philip as trustees. We find nothing inconsistent in that effort and thus no basis to apply the doctrine of estoppel.