SMITH, ET AL. *v.* WATNER, ET AL.

[No. 119, September Term, 1969.]

*Decided January 8, 1970.*

The cause was submitted on brief to HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

Submitted by *William R. Scannell* for appellants.

Submitted by *William O. E. Sterling* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

This dispute, now somewhat musty, comes to us from St. Mary's County. It all began with a tax sale in December 1953. In February 1969 the chancellor, Dorsey, J. (now C.J.) dismissed appellants' petition to set aside the 1957 decree of foreclosure. We shall set aside Judge Dorsey's order, but first, the narration of what happened in the years between must be endured.

Appellants acquired their one-half acre of land from Paul Bailey in August 1939, the deed for which was duly recorded among the land records of St. Mary's County. On 14 December 1953, taxes for the year 1952 being then unpaid, the collector sold the lot to the appellee Watner for the sum of $7.10, he being at that price the highest bidder therefor. Code, Art. 81, §§ 70 *et seq.* (1969 Repl. Vol.). On 9 December 1955 Watner filed his bill to foreclose appellants' equity of redemption. *Id.* at §§ 97 *et seq.*

He alleged his own citizenship but he said it was not known to him "whether * * * [appellants were] living or dead, and * * * [that their] present residence" was unknown to him. The lot was described merely as a "lot * * * in Seventh Election District * * * assessed in the name of * * * [appellants] *no deed for said real estate * * * however, appearing in the Land Records.*" (Emphasis added.) It is clear, even now, that the records of the County Treasurer, in 1953, showed appellants to be the owners of the lot and that their address, at the time, was 8109 Woodmont Avenue, Bethesda (Montgomery County), Maryland. There was attached to the bill of complaint the affidavit of Watner's attorney in which he declared that he had made "a complete search of the Land Records * * * for a period of more than forty years * * *" and that the title to the property was in the appellants. He did not give any reason why he had inserted in the bill of complaint the allegation that there was "no deed for said real estate" appearing in the land records.

On 19 December the clerk issued the Order of Publication and on the next day, 20 December, he issued a subpoena, naming the appellants but giving neither their address nor any directions to the sheriff (of either St. Mary's or Montgomery County) as to how they might be found. The order of publication was equally lacking in information. The subpoena was returned *"Non Est"* by the sheriff of St. Mary's County on the following day, 21 December 1955, making it at once obvious that he had made not the slightest effort to find or serve the appellants. January 16, 1956 was named in both the subpoena and the order of publication as the day before which, the appellants were warned, they must either answer the bill of complaint or redeem their property. This was contrary to §§ 106 and 107 of Art. 81, both of which require a period of "not less than sixty days from the day on which the bill of complaint was filed." The order of publication appeared on 22 December in the "Saint Mary's Beacon" for the first of four successive weeks. The certificate of publication was filed on 4 March. Except for

the bill of complaint, the tax sale certificate, the affidavit of Watner's attorney already referred to, the sheriff's return and the certificate of publication to which was attached a copy of the advertisement, the record is bare. There were no exhibits, no testimony, no supporting affidavits, no memoranda. The decree of foreclosure was signed by the chancellor on 2 March 1957, two days *before* the filing of the certificate of publication.

The appellant Smith testified at the hearing on his petition to set aside the foreclosure order that he paid the taxes for the years 1955, 1956 and 1957. When he tried to pay the 1958 and 1959 taxes he was told that they had been paid. Suspecting that something was amiss he "went to Mr. Paul Bailey to help * * * [him] try to find out what the story was on the whole thing." After he discovered the foreclosure decree Mr. Bailey, in August 1960, wrote to Watner suggesting that the matter might be settled amicably. Watner referred him to his attorney who replied that "small matters such as this tend to become enveloped in legalistic ritual when a few brief, direct and intelligent words between the parties dispel all the difficulties;" he suggested the parties work it out themselves. Nothing came of this and on 6 November 1961 appellants filed a petition alleging lack of jurisdiction in the court to pass the decree of foreclosure, seeking its rescission and asking for a declaration that the deed to Watner was null and void. The return of the sheriff of Baltimore City indicates that on 17 November 1961 Watner was summoned and that, on the same day, a copy of the petition was left with him. Watner made no response to the petition of appellants.

Two years later, on 20 September 1963, the court, apparently acting independently of any motion or suggestion by either party, ordered the dismissal of "the above styled cause," unless cause to the contrary be shown within 30 days. For reasons known only to himself the clerk notified Watner's local counsel but gave no notice to Mr. Bailey. Another two years drifted by. On 8 June 1965 Mr. Bailey, alleging the petition to have been "inadvertently

dismissed," moved that it be reinstated. The chancellor signed an order the same day reinstating the petition and setting the issues for trial within 90 days. In November Watner's attorney, who had moved to California, wrote to Mr. Bailey stating that he had not represented Watner since 1962. Watner was ordered, in December 1965, to employ new counsel. He did not do so. Indeed, there is no evidence of any further participation in these proceedings by Watner.

On 7 March 1966, the day set for the hearing, the appellees William E. Bailey and Patricia, his wife, moved "for leave to intervene" alleging they had purchased the land from Watner and that a deed to them, dated 20 November 1965, had been recorded among the land records; they further alleged they were in possession of the property. Leave having been granted by the court, they filed an answer to the petition of the appellants. They said, in their answer, that their contract of sale with Watner was dated 6 May 1965. William Bailey testified that, between the signing of the contract of sale and the closing in November he had been told it was tax sale property, that a law suit was pending, and that the Smiths "had been trying to get their property back." He testified also that he had paid Watner $400 for the property, that the costs of settlement were $32.65 and that he had since spent about $135 for cutting grass and "filling in the marsh."

In his opinion, filed three years later, Judge Dorsey states that appellants' contention "in effect, is that the description of the property * * * [in the bill to foreclose] was invalid." We do not so understand it. The bill of complaint states that the court was without jurisdiction because the appellants' deed was a matter of record and because they *should have and could have been summoned as they were within the jurisdiction * * * [of the] court, but they were not so summoned."* (Emphasis added.)

## I.

We are not unmindful of that part of § 112 of Art. 81 which provides that "[t]he decree shall be final and conclusive upon the defendants * * *" nor of that part of § 113 which provides that "[n]o application shall thereafter be entertained to reopen any final decree rendered under the provision of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose * * *." Nonetheless, we think the court below lacked jurisdiction to decree a foreclosure.

The language of § 106 states quite clearly what must be done in the matter of "Service of Notice" upon residents of Maryland:

> "Upon the filing of the bill of complaint, the court shall issue its subpoena for all parties defendant named in the said bill *who are residents of this State* and upon such bill the same process by summons, notice or otherwise shall be had to procure the answer and appearance of all such defendants as is had in other cases in equity, except as otherwise provided in this subtitle. The subpoena shall warn all parties named as defendant to appear in court on or before a certain day named in said subpoena, which day shall be *not less than sixty days from the day on which the bill of complaint was filed,* to answer the said bill or to redeem the property and shall contain a statement that in case of failure to do so, a final decree will be rendered foreclosing all rights of redemption in the property. Provided that in all cases where two successive subpoenas against a named defendant have been returned non est or *upon the return of one subpoena non est and proof by affidavit that a defendant has kept out of the way or has secreted himself to avoid service of the subpoena, or whose whereabouts may be unknown,* such de-

fendant shall be deemed to be served by the publication issuing under the provisions of the succeeding sections as if he were a nonresident." (Emphasis added.)

That the appellants were residents of Maryland at the time of the issuance of the subpoena is uncontradicted; that the record shows the issuance of only one subpoena is beyond dispute; that there was no affidavit as required by the statute is equally beyond dispute. And it is precisely this situation which distinguishes the case at bar from *Sanchez v. James,* 209 Md. 266 (1956) where *two* subpoenas were issued and a notice by publication given to the property owner, shown by the records to be a resident of the District of Columbia but who had become a resident of Maryland when the foreclosure was filed, and *James v. Zantzinger,* 202 Md. 109 (1953), where *two* subpoenas were issued against a resident of Maryland and returned non est.

It is interesting to note that Maryland Rule 105 became effective on 1 January 1957, just two months before Judge Dorsey signed the decree of foreclosure. Section g 1 is as follows:

"g. *Residence Unknown.*

"1. Affidavit before Judgment.

"Where notice by publication alone has been given, because the residence or whereabouts of the defendant is unknown, no interlocutory or final judgment for the plaintiff shall be given until proof is made by affidavit to the satisfaction of the court that reasonable efforts to locate the defendant and to warn him of the pendency of the action, have been made. The failure of the plaintiff to make such reasonable effort in good faith, and to offer proof thereof, shall be ground for the postponement or denial of the entry of a decree *pro confesso,* judgment by default or a final judgment."

The affidavit need not be filed, however, if the affidavit required by Code, Art. 81, § 106, *supra*, now Rule 104 h 2, has been filed. In *Jannenga v. Johnson*, 243 Md. 1 (1966), Judge Barnes, after reviewing the earlier cases, said, for the Court:

"In *Hauver v. Dorsey*, 228 Md. 499, 180 A. 2d 475 (1962) we said that Maryland Rule 105 applied to suits to foreclose rights of redemption, so that in situations where a resident, or, as in this case, a nonresident is proceeded against by order of publication pursuant to section 107 of Article 81, the notice requirements of Maryland Rule 105 must be complied with.

"Code (1957), Art. 81, § 113 provides that a decree setting aside an owner's equity of redemption in property conveyed at a tax sale shall be conclusive and may not be reopened 'except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose.' We held in *Hauver v. Dorsey, supra,* that the mere failure to file an affidavit or other evidence of compliance with the requirements of Maryland Rule 105 is not a jurisdictional defect such as would void a decree setting aside an owner's rights of redemption.

"Mrs. Jawitz makes no claim in this case of actual fraud in the conduct of the proceedings to set aside her equity of redemption. We hold, however, that before one may proceed by order of publication pursuant to section 107 of Article 81, he is required by that section to comply with the provisions of Maryland Rule 105 and to make a good faith effort to furnish the defendant with such personal notice as would reasonably inform him of the proceedings against his property. A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have

been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty. The Court in *Hauver* did not pass upon the issue of constructive fraud present in the case at bar." *Id.* at 4-5.

However, we shall bypass the question whether Judge Dorsey was bound by the provisions of Rule 105 when he signed the decree of foreclosure because we think *Master v. Master*, 223 Md. 618 (1960), is dispositive of the issue now before us. In that case the action to set aside the decree of foreclosure was brought, as in the case at bar but unlike *Jannenga*, by a resident of Maryland. Judge Hammond (now Chief Judge) for the Court, said:

"The order of publication was in no way constructive notice to the wife. A proceeding to foreclose an equity of redemption in a tax sale is a proceeding *in rem* or *quasi in rem* and the Legislature, without affronting due process, could have provided that all interested parties, including residents, were to be brought before the court by publication. *Gathwright v. Baltimore*, 181 Md. 362; *James v. Zantzinger*, 202 Md. 109, 114. The Legislature, however, chose to require in * * * [Code, Art. 81, §§ 106-107 (1969 Repl. Vol.)] that residents of the State must be personally served by subpoenas and that only if there were returns of *non est* on two successive subpoenas against a named resident defendant, or one *non est* and an affidavit of evasion of service, could such a defendant be treated as a nonresident and served by publication. Since the wife was admittedly a resident, living at an address known to the complainants, and was not served, the court had neither the right nor the power to proceed against her interest in

the property, and the order of publication was without effect as to it.

"In *James v. Zantzinger,* and in *Thomas v. Hardisty,* 217 Md. 523, 530, both referred to above, this Court said: 'The statutory requirements as to notice required to determine taxpayer's right to redeem from a tax sale are mandatory and must be strictly followed.' See also *Brashears v. Collison,* 207 Md. 339." *Id.* at 624-25.

Judge Hammond went on to observe that it was "hardly necessary to expound the theory that one who deliberately and purposefully fails to serve a defendant and represents to the court that there has been such service is guilty of fraud in the conduct of the proceedings * * *." *Id.* at 625. While we find it unnecessary to go that far in the instant case, we think that a more cavalier attitude toward the rights of the appellants would be hard to imagine.

## II.

Appellees' argument that appellants are barred by laches is but a reprise of Judge Dorsey's comment in that regard. He said:

"In addition to the above, the Court is persuaded not to overlook the time element involved in this proceeding. As stated above, no action was filed for four years following the entering of the Decree on March 2, 1957, foreclosing the petitioners' rights of redemption of the property; and no satisfactory explanation appears of record in support of such delay. In view of this situation, the Court would feel obliged to give further consideration to the cause because of the element of laches so glaringly apparent, with particular notice of the subsequent changes in conditions during the untimely delay."

Smith testified he first learned of the foreclosure in

1959 or 1960 and that within a few months thereafter he consulted Mr. Paul Bailey. Then there was a period during which both counsel and the parties themselves sought to compose their differences. Failing in this the petition to set aside the decree was filed on 6 November 1961. In *Berman v. Leckner*, 193 Md. 177, 185 (1949), we said:

"* * * [I]t is an essential element of laches that the party charged with it should have had knowledge or the means of knowledge of the facts creating his right or cause of action. Laches cannot be imputed to a party who has been justifiably ignorant of the facts creating his right or cause of action, and has consequently failed to assert it."

It has been said that "[d]elay will be excused when occasioned by efforts to obtain a settlement or satisfaction without litigation." 30A C.J.S., *Equity* § 126 at 80 (1965).

Appellees also argue, because there was a period of five years between the filing of appellants' petition to set aside the decree and the hearing before Judge Dorsey, on 7 March 1966, that this also establishes the bar of laches. We are not so persuaded. Watner was served with a copy of the petition to set aside the decree of foreclosure within two weeks after it was filed. As we have said, he disregarded it as he did a later order to employ new counsel. Whether his local attorney brought to his attention in September 1963 the court's rule to show cause why the "case should not be dismissed" is not discoverable from the record. When Mr. Paul Bailey, in 1965, obtained the reinstatement (actually it was never dismissed) of appellants' petition he suggested proper notice of the trial date "to all parties," but another nine months passed by before the case came on for trial. Obviously one can hardly charge the appellants with indifference or delay without leveling the same charge against Watner. After all the burden was on him to go forward and answer appellants' petition. In any event, it can hardly be said

that any disadvantage has accrued to him. His out-of-pocket expenses were both small and certain of reimbursement. He seems to have paid the taxes up until 1959 but there is no evidence he paid them thereafter. Indeed, his venture will have produced for him a handsome profit if the William Baileys do not succeed in recovering from him the $400 they paid him for the property. Of course Watner may have intended to sell the lawsuit along with the property as it seems most unlikely he ever intended to defend himself against appellants' move to regain it. Whether the Baileys intended to buy the lawsuit is now without significance. They had the advice of counsel, they knew the property had passed through a tax sale, they were aware of the pending litigation and they were prepared to assume the risks involved. As we see it they stepped willingly into the shoes of Watner. 30A C.J.S., *supra,* § 118 at 65-66. Indeed they do not even claim to be bona fide purchasers.

Undeniably there has been a suffusion of lethargy in the progress of this affair but in our judgment whatever part of it might fairly be attributed to the appellants can hardly be enough to support the charge of laches. That the chancellor's opinion was three years in the making suggests the lethargy may have been contagious.

We shall remand the case for the passage of a decree conformable with the view expressed herein and for the further proceedings made necessary by § 113 which provide that "[i]f the final decree of the court foreclosing all rights of redemption is set aside on the ground of lack of jurisdiction * * * the amount required to redeem shall be the amount required by the provisions of this subtitle, and in addition thereto, the reasonable value, at the date the decree is set aside, of all improvements made on the property by the purchaser and his successors in interest." In the calculation of the amount to be paid by the appellants it will be up to the chancellor to decide how much of the $135 claimed by the Baileys is an "improvement" within the meaning of the statute. We doubt that "clean-

ing up" and "cutting the grass" are "improvements." As we have intimated, the $400 paid to Watner will be excluded.

*Decree reversed.*

*Case remanded for further proceedings conformable with the views expressed in this opinion. Costs to be paid by the appellees.*