568 A.2d 1125

**Charles RICE**

v.

**Sabrina DUNN, et vir.**

**No. 542, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 2, 1990.

Susan P. Whiteford, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and James G. Klair, Asst. Atty. Gen. on the brief), Baltimore, for appellant.

Frances F. Rogala (Tighe, Curhan, Viehe & Rogala on the brief), Washington, D.C., for appellees.

Argued before MOYLAN and CATHELL, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

This is an appeal by Charles Rice, Commissioner for the District Court of Maryland for Montgomery County, from orders of the circuit court denying Rice's motion for summary judgment based upon absolute judicial immunity or, alternatively, qualified immunity. Commissioner Rice is the subject of a tort action filed by the appellee, Sabrina Dunn.

Preliminarily, we address the issue raised by Commissioner Rice under the Collateral Order Doctrine which authorizes immediate review where a defense of judicial

immunity is asserted.[1]  The doctrine was recognized in *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), involving the immediate appealability of an order rejecting the defense of sovereign immunity.  Thereafter, in *Bunting v. State*, 312 Md. 472, 540 A.2d 805 (1988), the Court held that an immediate appeal would not lie under the collateral doctrine from an order denying a motion to dismiss an indictment based on an alleged violation by the State of the "single transfer" rule of the Interstate Agreement on Detainers.

In *Bunting*, the Court emphasized the importance of narrowly construing the notion of an entitlement not to be sued or prosecuted for the reason that if numerous rights, such as the right to summary judgment or the right to invoke a statute of limitations, were treated in the same manner as double jeopardy or sovereign immunity claims, "the collateral order doctrine would largely erode the final judgment rule." *Ibid.*, at 480, 540 A.2d 805.

The Court made clear that the idea that an issue is not effectively reviewable after trial where it involves a right to avoid the trial in the first instance, "should be limited to double jeopardy claims and a very few other extraordinary situations.  Otherwise ... there would be a proliferation of appeals under the collateral order doctrine.  This would be flatly inconsistent with the long established and sound public policy against piecemeal appeals." *Ibid.*, at 482–83, 540 A.2d 805.

Following *Bunting*, the right to an appeal from a denial of summary judgment based upon a claim of sovereign immunity was acknowledged in *Board of Trustees v. Fineran*, 75 Md.App. 289, 541 A.2d 170 (1988) (Wilner, J.), but the Court proceeded to hear the underlying claims because the

---

**1.** Four elements must be present for an immediate appeal under the collateral order doctrine:
1. The order must conclusively determine the disputed question,
2. resolve an important issue,
3. be completely separate from the merits of the action and
4. be effectively unreviewable on appeal from a final judgment.

immunity issues were inextricably involved with those claims. *Fineran* was a suit for breach of contract and wrongful discharge filed against Board of Trustees of State Colleges and Universities as well as individual Board members and college presidents.

The most recent case addressing the doctrine is *State v. Jett*, 316 Md. 248, 558 A.2d 385 (1989). The State, unsuccessfully, sought to appeal the denial of its motion to dismiss a tort claim asserted against it based upon sovereign immunity. The plaintiff's complaint named only the State as a defendant in claiming false arrest, false imprisonment and negligent injuries inflicted and caused by personnel of the Prince George's County Sheriff's Department alleged to be "State officials."

The Court (Rodowsky, J.) pointed out that *Hogg, supra*, involved Maryland common law sovereign immunity "in its full, unrestricted vigor," whereas *Jett* turns on the construction of the Maryland Tort Claims Act which contains a broad consent to suit thereby nullifying the concept of freedom from suit. Unlike double jeopardy claims, the issues presented in *Jett*, the Court concluded, are effectively reviewable after the trial is concluded, because the right to avoid the trial itself is not involved.

We believe that the judicial immunity claimed in the case *sub judice* involves the right to avoid the trial itself and, therefore, we address the issue notwithstanding that the trial court candidly admitted that the motion by Rice was denied for the sole purpose of obtaining an appellate decision before a hearing on the merits.

The facts material to the question of judicial immunity are limited. In the interests of clarity we shall expand on those facts by setting forth the background for this litigation.

Dr. Bruce Dunn and Sabrina Dunn, his wife, live in Saudi Arabia. Dr. Dunn was formerly married to Cecilia Dunn who initiated the charges leading to the arrest of Sabrina Dunn on June 30, 1985.

The relationship between Dr. Dunn and his former wife has been contentious. From 1983 to 1985 Cecilia Dunn had five warrants issued for the arrest of Dr. Dunn and/or members of his family. Rice issued three of these warrants and all three were dismissed without prosecution.

In December 1984, Rice and Cecilia Dunn began to see each other socially. Dr. Dunn and his present wife appeared at his former residence on May 17, 1985, allegedly to obtain some medical textbooks. An argument ensued with Cecilia Dunn and resulted in a call to the police by Cecilia. The officer who responded to the call talked to those present and left without taking any further action.

After the Dunns departed, Cecilia appeared at the Silver Spring District Court requesting that a warrant be issued for Sabrina Dunn for stealing books from Cecilia's residence. Commissioner Rice issued the warrant. The statement of charges was written by Rice on this and on prior occasions because Cecilia had difficulty understanding English. The statement read:

> While visiting in my home, she went into my property and took books. She was going through my property. My property was all over the floor.

Rice was aware at the time the warrant was issued that the police officer who came to the house had not arrested anyone present.

Dr. and Mrs. Dunn, meanwhile, flew to Saudi Arabia and returned to Montgomery County June 23rd for the purpose of attending a visitation hearing concerning Dr. Dunn's children on July 1. On the 30th of June at 8:00 p.m., the police, acting upon Cecilia's notification of the Dunn's address, arrested Sabrina and removed her in handcuffs from a hotel and took her to the police station where she was fingerprinted and photographed.

Thereafter, Sabrina filed this action against Commissioner Rice and Cecilia Dunn, alleging malicious prosecution, abuse of process, and false imprisonment. Rice was alleged to have acted "beyond the scope of his authority or, in the

alternative, within the scope of his public duties but without justification."

The seminal case in the United States Supreme Court relating to judicial immunity is *Bradley v. Fisher*, 13 Wall., 335, 20 L.Ed. 646 (1872), holding that judges acting in the exercise of judicial acts within their jurisdiction are immune from suits for civil damages. The Supreme Court acknowledged that judicial immunity has been the settled doctrine in the English courts for many centuries and "has never been denied, that we are aware of, in this country."

The common law of England, including the common law doctrine of judicial immunity, was adopted in Maryland by the Maryland Constitution of 1867. Maryland courts gave recognition to common law judicial immunity in *Hiss v. State*, 24 Md. 556 (1866), holding that a justice of the peace could not be held civilly liable for a judicial act, as opposed to a ministerial act, performed by him.

For the purposes of this case, we focus on whether the act performed was by a judicial officer; whether the act was judicial rather than ministerial; and whether the act was within the jurisdiction of the officer. In *State v. Smith*, 305 Md. 489, 517, 505 A.2d 511 (1986), the Court of Appeals held:

> ... [I]t is beyond question that Commissioners of the District Court of Maryland are judicial officers in name and in fact. The Maryland Rules so designate them. Rule 4–102(f).... Their duties are those which may also be exercised by District Court judges. They are, in the true sense of the term, "judicial officers" and they perform judicial functions.

Courts and Judicial Proceedings Article sec. 2–607(c)(1) sets forth the duty of District Court Commissioners to accept applications and determine probable cause for the issuance of charging documents, and sec. 2–607(c)(2) further requires:

> A commissioner shall advise arrested persons of their constitutional rights, set bond or commit persons to jail in

default of bond or release them on personal recognizance if circumstances warrant, and conduct investigations and inquiries into the circumstances of any matter presented to him in order to determine if probable cause exists for the issuance of a charging document, warrant, or criminal summons and, in general, perform all the functions of committing magistrates as exercised by the justices of the peace prior to July 5, 1971.

Pellucidly, Commissioner Rice was performing a judicial act within the jurisdiction of the court on May 17, 1985, when he issued an arrest warrant for the appellee. The alleged offense took place in Montgomery County and the complainant filed the charges under oath. Md.Rule 4–212 governs the procedure to be followed in the issuance of a warrant or summons. Pursuant to sec. (d) of the Rule, in the District Court "a judicial officer" may issue a warrant upon a finding of probable cause to believe that the defendant committed the offense charged and that (1)(C) the whereabouts of the defendant are unknown and the issuance of a warrant is necessary to subject the defendant to the jurisdiction of the court. Rice knew that appellee was a citizen of Saudia Arabia and that she could not be brought before the court until she returned to the United States and was apprehended.

Appellee argues that a judicial officer is not performing a judicial act when he engages in writing out the statement of charges for an applicant who can read and write English at the level of a first grade student. The argument is not persuasive. A judicial act is determined by looking at the nature of the act itself. Immunity is justified by the functions it protects and serves, not by the person to whom it attaches. *See Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The function does not lose its judicial cloak merely because the judicial officer assisted in the preparation of the documentation from the statements made and attested to by the complainant.

■ Appellee's remaining arguments are without merit. Whether Commissioner Rice should have issued a summons rather than a warrant, due to prior complaints being dismissed, is an attack on the judicial officer's discretion not his jurisdiction. It matters not which option he selects where either is judicial in nature and within his authority.

The final assault by the appellees suggests that, because of Rice's socializing with the complainant Cecilia Dunn, a conspiracy existed amounting to an abuse of judicial office, thereby defeating immunity. The case relied upon for this argument is *Rankin v. Howard,* 633 F.2d 844 (9th Cir.1980). *Rankin* is inapposite in that it involved "a clearly inordinate exercise of unconferred jurisdiction." It is even less persuasive for the reason that it was expressly overruled in *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986). "Conspiracy to predetermine the outcome of a judicial proceeding, while clearly improper, does not pierce the immunity extended to judges.... As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies." *Accord, Korotki v. Goughan,* 597 F.Supp. 1365 (D.Md.1984). Finally, appellees' conspiracy count was stricken by the trial court; there was no appeal therefrom. The matter, therefore, has not been preserved for review.

■ We hold that District Court Commissioners are judicial officers and are absolutely immune from civil liability for judicial acts performed within their jurisdiction. The trial court erred as a matter of law in denying Commissioner Rice's motion for judgment based upon judicial immunity.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.