13 A.3d 43

Michelle D'AOUST

v.

Cindy R. DIAMOND, et al.

No. 1708, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 29, 2010.

Reconsideration Denied March 10, 2011.

196

198

Jonathan A. Aznel (Azrael, Gam & Franz, LLP, on the brief), Baltimore, MD, for Appellant.

Howard G. Goldberg (Robin G. Banks, Goldberg, Besche & Banks PC, on the brief), Baltimore, MD, for Appellee.

Panel: WOODWARD, MATRICCIANI, JAMES P. SALMON (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On April 7, 2008, appellant, Michelle D'Aoust, filed a complaint in the Circuit Court for Harford County, naming as defendants appellees Cindy Diamond, Bruce Brown, and Rosen Hoover, P.A.[1] Appellees filed a motion to dismiss on June 26, 2008, which the court granted on September 29, 2009. Appellant filed a timely notice of appeal on September 30, 2009.

## QUESTIONS PRESENTED

Appellant presented three questions for our review, which we have consolidated, as follows:

Did the trial court err when it granted appellees' motion to dismiss?

For the reasons set forth below, we answer yes. Therefore, we reverse the judgment of the trial court and remand this case for further proceedings.

## BACKGROUND

On April 7, 2008, appellant sued appellees in the Circuit Court for Harford County. Her complaint contained the following relevant factual allegations:

---

1. Appellant also named the Hickory Hills Condominium Association as a defendant in circuit court, but that defendant has not participated in this appeal, and appellant has alleged no error in its dismissal.

 The parties agree that Rosen Hoover's *respondeat superior* liability is contingent upon Diamond and Brown's individual liabilities, and their defenses are identical in these preliminary proceedings. Our opinion therefore refers to Brown, Diamond, and Rosen Hoover collectively as "appellees."

2. Defendants CINDY R. DIAMOND and BRUCE D. BROWN are Petitioners and court-appointed Trustees in the case styled *Diamond, et al. v. D'Aoust,* Case No. 12–C–05–364, in the Circuit Court for Harford County ("the Petition for Sale").

\* \* \*

6. Defendants Diamond and Brown appointed Trustees to sell the Property by Order dated March 14, 2005. The Property was sold by the Trustee at public sale on May 26, 2005 for $65,000.00. There was no existing mortgage on the Property at the date of Sale.

\* \* \*

9. . . . [T]he Defendants Diamond and Brown had actual or constructive knowledge that Plaintiff's address was 11010 Bowerman Road, White Marsh, Baltimore County, Maryland.

10. Despite its knowledge, the Defendants Diamond and Brown, as members of the Law Firm and as Trustees, on May 10, 2005 directed the Notice of the Sale of Plaintiff's Property to the Property address, rather than 11010 Bowerman Road.

11. Likewise, the Defendants Diamond and Brown caused the Notice of Intention to Create a Lien to be posted on the Property, and did not serve or mail a copy of said Notice to Plaintiff at her address at 11010 Bowerman Road.

12. As a result of the failure of Defendants Diamond and Brown to send Notice of the Sale to Plaintiff at 11010 Bowerman Road, Plaintiff did not know that her Property was sold on May 26, 2005. Had Plaintiff been advised of the sale by notice at 11010 Bowerman Road, she would have taken steps to prevent the Sale by paying the condominium lien, and/or would have attended the sale to bid on the Property.

14. On or about July 5, 2005, Plaintiff filed exceptions to the sale in the Circuit Court for Harford County.

15. A hearing on Plaintiff's exceptions was scheduled for August 31, 2005.

16. Prior to the hearing, Defendant Cindy Diamond told Plaintiff that the Trustees were withdrawing objections to the exceptions and would advise the Court that no hearing was required because the exceptions should be sustained.

17. Defendants Diamond and Brown subsequently withdrew objections to the exceptions but did not advise the Court that the exceptions should be sustained and the sale not ratified.

18. The Court ratified the exceptions without a hearing on September 14, 2005 (filed October 3, 2005). Although Defendants Diamond and Brown knew that the Court's ratification was ordered without knowledge that the sale had been made without adequate notice to Plaintiff, the Defendants did not advise the Court, but instead conveyed the property without further notice of Plaintiff, to the party who purchased it at the public sale, with the intent of depriving Plaintiff of obtaining reconsideration of the September 14, 2005 ratification order.

Based on the forgoing facts, appellant alleged two counts. Count one, entitled "Breach of Duty," incorporated the forgoing allegations and added:

21. In proceeding with a judicial sale of Plaintiff's Property, Defendants Diamond and Brown owed a fiduciary duty to Plaintiff to conduct the proceedings in accordance with Maryland law and the Maryland Rules of Procedure, including without limitation, Maryland Rule 14–206(b)(2).

22. Defendants Diamond and Brown breached their fiduciary duty owing to Plaintiff by failing to send Notice of Sale of Plaintiff's Property to her last known address, i.e., 11010 Bowerman Road, White Marsh, Maryland 21162, as required by § 14203(a) of the Real Property Article (Maryland Contract Lien Act).

23. Defendants Diamond and Brown further breached their fiduciary duty and committed actual fraud by filing a false or incorrect Affidavit in the Petition for Sale case stating that they had sent Notice of the Sale of Plaintiff's Property to her at her last known address.

Count two of appellant's complaint, entitled "Constructive Fraud," added the following allegations:

27. The failure of Defendants Diamond and Brown to provide notice to Plaintiff in accordance with Maryland law and the Maryland Rules of Procedure amounts to constructive fraud under the doctrine of *Jannenga v. Johnson*, 243 Md. 1, 220 A.2d 89 (1966).

28. Defendants Diamond and Brown further committed constructive fraud in not advising the Court that they had failed to give Plaintiff a proper notice of the sale of her condominium unit, but instead conveying the unit to the purchasers.

Appellees filed a "Motion to Dismiss" on June 26, 2008, which incorporated a memorandum of law and two exhibits in the form of affidavits from Diamond and Brown. Appellees' motion argued that they were entitled to the defense of judicial immunity and that the court should therefore dismiss appellant's complaint, with prejudice. Appellees' incorporated memorandum of law argued that "Diamond and Brown were not personally aware that Plaintiff had changed her address and no longer resided at the Property," citing Diamond and Brown's affidavits to that effect. Appellant responded to the motion, to which appellees replied, in turn.

The trial court issued a memorandum opinion and order on August 21, 2009. The court began its opinion by noting that "[a] motion to dismiss serves the same function as the now defunct demurrer" and that in rendering its decision, "[t]he court is required to accept as true all well-pleaded material facts in the declaration and exhibits thereto, as well as any reasonable inferences that may be drawn there from [sic]." The court further noted that its "decision on a motion to dismiss a complaint does not pass on the merits of the claim; it merely determines the Plaintiff's right to bring the action," and that "[t]o withstand a motion to dismiss for failure to state a claim, a party need only allege facts that, if proven, would entitle them to relief."

The court cited *Merryman v. Bremmer*, 250 Md. 1, 241 A.2d 558 (1968), and *Lurman v. Hubner*, 75 Md. 268, 23 A. 646 (1892), for the proposition that where there is a judicial sale of property, the court itself is a vendor and any trustee appointed to make the sale is an agent of the court for that purpose. Thus, the court reasoned: "As a general rule, judicial officers are immune from civil actions if the action in question that was performed by the judicial officer was discretionary and not ministerial and within the jurisdiction of the officer's authority," citing *Rice v. Dunn*, 81 Md.App. 510, 568 A.2d 1125 (1990), and the more recent case of *Tucker v. Woolery*, 99 Md.App. 295, 637 A.2d 482 (1994).

The trial court concluded its opinion with the following analysis:

> In the present case, Diamond and Brown did nothing to exceed the scope of their authority as trustees. They sold the property in a manner that they believe complied with the court's order and the court ratified the sale. Even assuming that they could have or should have known of a different address to notify Ms. D'Aoust this in and of itself does not mean that they did anything beyond the scope of their authority which would lead to their losing the qualified immunity that they have as trustees and to justify them being held personally liable through the Plaintiff. For this reason the court believes that the Defendants' *Motion for Summary Judgment* should be granted.

(Emphasis added)

Shortly after referring to appellees' motion as one for "summary judgment," the court's opinion concluded that "the Defendants' *Motion to Dismiss* should be **GRANTED**." (Italic emphasis added.) The order that accompanied it, however, once again indicated that it was granting "Defendants' cross motions for *summary judgment.*"

The court amended its judgment on September 29, 2009, and entered an order granting appellees' motion to dismiss as to all parties. Appellant noted her appeal the next day, on September 30, 2009.

DISCUSSION

## I. PROCEDURAL POSTURE

Our first task in unraveling the issues of this appeal is to determine whether to treat the court's order as a dismissal or as a summary judgment. We begin with Maryland Rule 2–322(c), which provides:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

Our treatment is guided by the Court of Appeals' decision in *Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 860 A.2d 871 (2004), in which the court explained the metamorphosis of a motion to dismiss to a motion for summary judgment:

> [I]f a trial court treats a motion to dismiss as a "speaking demurrer" under Md. Rule 2–322(c) and considers "matters outside the pleading" (*see* [Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary,*] 206–207 [ (3d ed. 2003) ], explaining that Rule 2–322(b) serves the same function as the common law demurrer but also permits a "speaking demurrer") the trial court must treat (and is presumed to have treated) the Rule 2–322(b) motion as a motion for summary judgment under Md. Rule 2–501. Md. Rule 2–322(c); *Dual v. Lockheed Martin, Inc. [Corp.],* 383 Md. 151 [161], 857 A.2d 1095, 1100 (2004) (No. 115, September Term 2003) (filed Sept. 13, 2004); *see Oak Crest Village, Inc. v. Murphy,* 379 Md. 229, 239, 841 A.2d 816, 822 (2004) (observing that the trial court treated a motion to dismiss as "one for summary judgment" under Md. Rule 2–322(c)). Unless the court states to the contrary, it is presumed to have considered also the factual allegations presented by the movant in its exhibits attached to the so-called motion for dismissal.

In this case, it is unclear whether the trial court considered the factual allegations presented in the exhibits attached to appellees' motion. Certain portions of the court's opinion indicate that it definitively treated the motion as one to dismiss, which would imply that it excluded the evidence in appellees' affidavits, while other portions of the opinion clearly refer to a motion for summary judgment.

██ Regardless of whether the court contradicted itself when it issued an order *dismissing* appellant's claims rather than *granting summary judgment,* we will consider the court's order as one dismissing the action. To the extent that the trial court relied on the evidence outside the pleadings, that was done in the alternative. The court held that, "[e]ven assuming that [Diamond and Brown] could have or should have known of a different address to notify Ms. D'Aoust this in and of itself does not mean that they did anything beyond the scope of their authority which would lead to their losing the qualified immunity that they have as trustees and to justify them being held personally liable through the Plaintiff." Thus, the court concluded that appellant's allegations would necessarily fail as a matter of law, even under the facts alleged. Furthermore, appellant nowhere argues that to do so was erroneous, and both parties consistently refer to the motion and order as dismissals.

██ For these reasons, we shall consider the court's order as a motion to dismiss and review it according to the following framework:

When considering on appellate review the grant of a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.,* the allegations do not state a cause of action for which relief may be granted. Upon appellate

review, the trial court's decision to grant such a motion is analyzed to determine whether the court was legally correct. We will uphold the dismissal only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.

*McHale v. DCW Dutchship Island, LLC,* 415 Md. 145, 155–156, 999 A.2d 969 (2010) (internal citations and quotation marks omitted).

## II. ANALYSIS

### A. The History of Immunity

 This case centers on the common law of immunity, an ancient feature of the common law that exists in two main forms:

[T]he Court has distinguished between the qualified and narrower immunity for discretionary acts generally accorded to public officials, and absolute judicial immunity, which, unlike qualified immunity, applies regardless of the nature of the tort and even where the suit against the judge alleges that he acted in bad faith, maliciously or corruptly.

*Parker v. State,* 337 Md. 271, 285, 653 A.2d 436 (1995) (citations omitted).

In *Parker,* Judge Eldridge addressed the doctrine of absolute judicial immunity in great historical detail. "The principle that judicial officers should be immune from all civil liability for their judicial acts has been part of the common law since very early days." 337 Md. at 277, 653 A.2d 436. English courts recognized the doctrine as early as 1607, and "by the seventeenth and eighteenth centuries, a broad concept of absolute civil immunity for judicial acts had been firmly established at common law." *Id.* at 277, 279, 653 A.2d 436. Carrying on that common law tradition, the Supreme Court's 1872 decision in *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 20 L.Ed. 646 (1872), "recognized that 'in all countries where there is any well-ordered system of jurisprudence' judges had been granted immunity from liability 'for acts done by them in the exercise of their judicial functions....'" *Parker,* 337 Md. at

280, 653 A.2d 436 (citing *Bradley*, 80 U.S. at 347, 13 Wall. at 347, 20 L.Ed. at 649).

■ In Maryland, "[t]he common law principle of absolute *judicial immunity* for judicial acts has neither been abrogated nor been modified[.]" *Parker*, 337 Md. at 283, 653 A.2d 436 (emphasis added). By contrast, certain acts of the Maryland legislature supersede the common law of *public official immunity*, most notably title twelve, "Immunity and Liability," of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.). But where there is no legislation, the common law doctrine survives as the default rule of law. *See Parker*, 337 Md. at 283 n. 7, 653 A.2d 436 ("The Maryland Declaration of Rights, Art. 5, provides that 'the Inhabitants of Maryland are entitled to the Common Law of England' except to the extent that the common law has been changed by the legislature or by this Court.").

■ As to qualified immunity, *Tucker v. Woolery*, 99 Md. App. 295, 637 A.2d 482 (1994), extended our ruling in *Rice v. Dunn*, 81 Md.App. 510, 515, 568 A.2d 1125 (1990), that "judicial officers"—such as the district court commissioner in *Rice*—are entitled to *qualified immunity* from suit. The *Tucker* opinion drew upon the common logic and purpose underlying the two separate strains of immunity, as well as persuasive opinions from federal and sister state jurisdictions, and held:

[T]rustees, of course, are not judges. We are nevertheless convinced that they are entitled to some degree of immunity. As the Supreme Court explained in *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983), "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process." The State of Maryland adopted the common law of England with the enactment of Article 5 of the Declaration of Rights. "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges-that is, be-

cause they, too, 'exercise a discretionary judgment' as part of their function." *Antoine v. Byers & Anderson, Inc.,* [508] U.S. [429, 436], 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (holding that court reporters are afforded no discretion in transcribing court proceedings and therefore are not entitled to judicial immunity for failing to produce transcripts in timely fashion).

99 Md.App. at 299–300, 637 A.2d 482.

### B. Scope and Discretion

As intimated by the forgoing authorities, immunity "protects both judges and legislators, so long as their acts are 'judicial' or legislative in nature and within the very general scope of their jurisdiction." *Mandel v. O'Hara,* 320 Md. 103, 107, 576 A.2d 766 (1990) (citing *Prosser & Keeton on Torts,* § 132, 1056–57 (5th ed. 1984); Restatement (Second) of Torts § 895D, comment c, at 412 (1977)). Thus, we applied the following three-part test to the court's appointed trustees in *Tucker* to determine whether they were entitled to qualified immunity:

1. Whether the act was performed by a judicial officer.

2. Whether the act was discretionary rather than ministerial.

3. Whether the act was within the jurisdiction of the officer.

99 Md.App. at 300–301, 637 A.2d 482.

■ All of appellant's allegations stem from appellees' actions undertaken as trustees in a judicial sale of real estate. Maryland Code (1974, 2010 Repl.Vol.), § 14–204(a) of the Real Property Article ("RP"), provides that a contractual lien "may be enforced and foreclosed by the party who obtained the lien in the same manner, and subject to the same requirements, as the foreclosure of mortgages or deeds of trust on property in this State containing a power of sale or an assent to a decree." The manner and requirements of such a sale are set forth in RP §§ 7–105 *et seq.* In such a judicial sale, "[t]he court itself is the vendor, the trustee being merely the agent of the court

to carry into effect the order of court directing the sale, and upon final ratification of the sale by the court the contract of purchase becomes complete." *Merryman,* 250 Md. at 8, 241 A.2d 558 (citing *Lurman v. Hubner,* 75 Md. 268, 23 A. 646 (1892)).[2] *See McCann v. McGinnis,* 257 Md. 499, 505, 263 A.2d 536 (1970) (citing *Warfield v. Dorsey,* 39 Md. 299, 307 (1874)) ("The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale.").

■ Appellant does not dispute that, as trustees, Diamond and Brown were judicial officers. Nor does appellant dispute that they acted within their delegated jurisdiction to dispose of the property by sale. Appellant argues only that Rule 14–206(b)(2)(A), "is mandatory and the duty of Diamond and Brown, as Trustees, is ministerial in nature: they are to send a notice to Ms. D'Aoust's *last known address by certified and first class mail.*" (Emphasis in original.)

Appellant cites to *McCray v. Maryland,* 456 F.2d 1, 4 (4th Cir.1972), in which the United States Court of Appeals for the Fourth Circuit held that filing documents is a ministerial and not a discretionary function.[3] But in *McCray,* the clerk's ministerial acts subsumed *all delegated authority,* which granted the clerk no discretion anywhere within its scope. *Id.*

---

**2.** While *Merryman* was decided before the present statutory scheme was enacted, we rely on the general fact that it involved "a judicial sale of real estate and not a conventional sale." 250 Md. at 8, 241 A.2d 558.

**3.** We cited the rule from *McCray* in *Tucker,* 99 Md.App. at 300, 637 A.2d 482, without commenting on the facts of that case. *McCray* was subsequently overruled by *Pink v. Lester,* 52 F.3d 73, 77 (4th Cir.1995), which held that, "[t]o the extent that McCray authorizes a cause of action [under 42 U.S.C.S. § 1983] for merely negligent conduct that impacts access to the courts, it is inconsistent with the Supreme Court's subsequent decision in [*Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ]."

McCray was thus overruled for its interpretation of 42 U.S.C.S. § 1983, not on the factual issue of whether a clerk engages in discretionary or ministerial functions. Because appellant has cited McCray only as persuasive authority on that narrow point, the case serves as a useful distinction and we consider it in our discussion.

at 4 ("Clerical duties are generally classified as ministerial, 2 Harper & James, The Law of Torts, 1644 (1956), and the act of filing papers with the court is as ministerial and inflexibly mandatory as any of the clerk's responsibilities."). Here, by contrast, the trustees' authority included substantial discretion, which they exercised on behalf of the court as seller. We need not go into great detail on this point, for as far back as 1875, Maryland courts have recognized that a trustee is vested with considerable discretion when selling property, which the Maryland General Assembly has not removed. *See Webster v. Archer,* 176 Md. 245, 4 A.2d 434 (1939) ("Unless the precise method of foreclosure sale is prescribed by contract or decree, some discretion is necessarily granted to the trustee, attorney, or assignee, making the sale, as to the manner in which divisible property will be offered, as a whole or in parts, that discretion being affected by the character and location of the property, and other circumstances."), *cited with approval in Jackson v. Townshend,* 249 Md. 8, 16–17, 238 A.2d 81 (1968); *see also Gould v. Chappell,* 42 Md. 466, 470 (1875) ("The discretion thus reposed in the trustees was not a mere arbitrary discretion, but a discretion coupled with a trust, and to be exercised solely for the benefit of the *cestuis que trust.*").

In short, appellant's argument defines "the act" under review too narrowly: it is not the mandatory notice provision, but the general position as trustee that gives rise to immunity in this case. Logically, appellant would have us hold that any "ministerial act" that falls within a broader discretionary function is without the protection of immunity. This cannot be so. Nearly every judicial officer's duties will include some ministerial act necessary to carry out a broader discretionary function. A rule that fails to shield those "nested" ministerial acts from liability would impair "the independent and impartial exercise of judgment vital to the judiciary," *Antoine v. Byers & Anderson,* 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), and contravene the purpose of judicial immunity. *See Parker,* 337 Md. at 280, 280 n. 5, 653 A.2d 436 (citing *Antoine,* 508 U.S. 429, 113 S.Ct. 2167). Appellant has thus failed to establish that appellees are not entitled to

qualified immunity for a particular ministerial act necessary to carry out a broader discretionary authority vested by the court.

## C. Qualified Immunity

Having established that appellees are entitled to assert the defense of qualified immunity, we now come to the heart of the matter on appeal: whether the facts alleged and their permissible inferences would, if proven, overcome appellees' defense, thus permitting her to survive their motion to dismiss. Our task is complicated by the fact that neither party recognized the obvious defects in appellant's pleadings. Resolving these problems inevitably leads us to conclude that appellees' motion was granted in error and that this case must be remanded for further proceedings.

The first pleading defect is that appellant's complaint sets forth identical causes of action in the guise of two separate counts. Count one alleges "Breach of Duty," and count two alleges "Constructive Fraud." Maryland Law is clear, however, that failure to provide notice as required by statute or rule in a judicial sale constitutes constructive fraud, which is itself a breach of duty.[4] In *Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 893 A.2d 1067 (2006), the Court of Appeals cited Black's Law Dictionary, 686 (8th ed. 2004), to define "fraud," and then contrasted it with "constructive fraud," noting:

That dictionary also defines constructive fraud as an "unintentional *deception* or misrepresentation that causes injury to another." *Id.* at 686 (emphasis added). What these definitions have in common is the inherent requirement that the person or entity defrauded must have been in

---

4. Although we do not reach this issue, it would naturally follow that a mortgagor aggrieved by an extrajudicial sale would have to rely on a fiduciary or other similar duty. *See Simard v. White*, 383 Md. 257, 313, 859 A.2d 168 (2004) (citing Edgar G. Miller, Jr., *Equity Procedure*, § 454 at 538 (1897)) (mortgagee acting under power of sale "acts not for himself alone, but as a fiduciary, and for the benefit of all parties interested in the proceedings").

some way deceived or misled by the actions of the person or entity alleged to have committed the fraud.

We have also defined constructive fraud as a " 'breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.' " *Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516–17 (2002) (quoting *Ellerin v. Fairfax Sav.*, 337 Md. 216, 236 n. 11, 652 A.2d 1117, 1126 n. 11 (1995)). . . .

In the context of tax sales, a Maryland case discussing constructive fraud as grounds to void a tax sale is *Jannenga v. Johnson*, 243 Md. 1, 220 A.2d 89 (1966). . . . Failure to comply with the notice requirements has since that time been considered constructive fraud. *See Arnold v. Carafides*, 282 Md. 375, 384 A.2d 729 (1978); *Smith v. Watner*, 256 Md. 400, 260 A.2d 341 (1970); *Brooks v. McMillan*, 42 Md.App. 270, 400 A.2d 436 (1979); *Karkenny v. Mongelli*, 35 Md.App. 187, 370 A.2d 137 (1977); but see *Walter E. Heller & Co. v. Kocher*, 262 Md. 471, 278 A.2d 301 (1971) (holding that so long as there is sufficient evidence to show that the owner received actual notice of the foreclosure proceedings, deviations from the procedures did not amount to constructive fraud); *Scheve v. McPherson*, 44 Md.App. 398, 408 A.2d 1071 (1979).

*Canaj*, 391 Md. at 421–23, 893 A.2d 1067.

Thus, regardless of whether we characterize appellees' duty to provide notice as fiduciary at common law or statutory, it is clear that a single alleged breach gives rise to a single cause of action for constructive fraud and not a coterminous action for general "breach of duty." Thus, to the extent that the trial court's order dismissed appellant's claim for "breach of duty," she can have no redress on appeal because the alleged cause of action was subsumed by her allegations of constructive fraud.[5]

---

**5.** Appellant also argues that "[t]he doctrine of judicial immunity does not extend to attorneys appointed as Trustees to make a judicial sale

█ The second defect in appellant's pleading regards her allegation of "actual fraud." Within appellant's count for "breach of duty," appellant alleges that "Diamond and Brown ... committed actual fraud by filing a false or incorrect Affidavit in the Petition for Sale case stating that they had sent Notice of the Sale of Plaintiff's Property to her at her last known address." In light of *Canaj*, above, there can be no argument that actual fraud is a cause of action distinct from constructive fraud. Appellant's "actual fraud" allegation is included within its claim of breach of duty and therefore in violation of Maryland Rule 2–305 ("Each cause of action shall be set forth in a separately numbered count."). Despite this, appellees specifically referenced and controverted appellant's fraud claim, and we therefore consider it to have been adequately pled. *See Kirchner v. Allied Contractors, Inc.*, 213 Md. 31, 36, 131 A.2d 251 (1957) (objection under former Maryland Rule 340(b)(3) requiring separate causes of action in separately numbered counts waived by failure to raise the point).

Appellant is thus left with two potential claims against appellees: one for constructive fraud and one for actual fraud. This brings us to the third—and mutual—failing in the parties' pleadings, which is that they ignore the crucial role that *intent*

---

where the Trustees' acts and omissions violate the Maryland Rules of Professional Conduct." Specifically, appellant argues that "[t]he allegations of the Appellant's Complaint state a cause of action against these attorney-trustees for breach of the standards imposed on attorneys by the Maryland Rules of Professional Conduct ("MRPC"), independently [sic] of or in addition to the fiduciary duties imposed upon them as trustees."

Not only was this not raised before the trial court, but a cursory reading of the MRPC preamble disposes of this argument:

Violation of a Rule does not itself give rise to a cause of action against a lawyer nor does it create any presumption that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other non-disciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

plays in immunity.[6] This is the thus-far-overlooked distinction between "absolute" and "qualified" immunity. These twin defenses are in some sense "fraternal," rather than identical, for they afford different levels of protection to the accused:

> An absolute immunity from tort liability stands even if the official acts in bad faith, or with malice or corrupt motives. *Prosser & Keeton on Torts*, § 132, at 1057 (5th ed. 1984) (footnote omitted) (Prosser). "[Q]ualified immunity is usually destroyed by 'malice,' bad faith or improper purpose[.]" *Id.* at 1059–60 (footnotes omitted).

*Mandel*, 320 Md. 103, 107, 576 A.2d 766 (1990).

The scope of qualified immunity at common law has not always been apparent. The language in certain Maryland decisions limited the qualified immunity exception to "malicious" acts. *See James v. Prince George's County*, 288 Md. 315, 323–324, 418 A.2d 1173 (1980) ("Once it is established that the individual is a public official and the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability."), *quoted with approval in Lovelace v. Anderson*, 366 Md. 690, 705, 785 A.2d 726 (2001), *Muthukumarana v. Montgomery County*, 370 Md. 447, 479, 805 A.2d 372 (2002), *de la Puente v. County Comm'rs*, 386 Md. 505, 511, 873 A.2d 366 (2005).

Any confusion on this point has been put to rest by the Court of Appeals' recent decision in *Houghton v. Forrest*, 412 Md. 578, 587, 989 A.2d 223 (2010), in which a citizen, Forrest, sued a Baltimore City Police Officer, Houghton. Forrest alleged "numerous intentional torts including assault, battery, false arrest, and false imprisonment." *Id.* at 584, 989 A.2d 223. Houghton lost in the circuit court and appealed the verdict on the ground that there was insufficient evidence to

---

6. This confusion was not resolved as of the time of arguments in this appeal, where appellant maintained that intent is not a part of qualified immunity analysis. (We presume appellant did not mean that appellees are entitled to absolute immunity, in which case appellant would have been correct.)

support a finding of malice, and that he was thus immune from liability. *Id.* Forrest responded that the trial court erred in requiring a finding of actual malice because public official immunity does not apply to intentional torts.[7] *Id.*

In holding that Houghton was not immune from Forrest's causes of action, the Court explained:

> Houghton claims immunity from judgment under a common law theory of public official immunity. Common law public official immunity is reserved for public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties. *See James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980).... [B]oth criteria that this Court set forth in *James* are met here.
>
> For more than twenty years, however, this Court has held that common law public official immunity does not apply to intentional torts. *See Lee v. Cline,* 384 Md. 245, 258, 863 A.2d 297, 305 (2004) ("The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct."); *Cox v. Prince George's County,* 296 Md. 162, 169, 460 A.2d 1038, 1041 (1983) ("a police officer does not enjoy this [public official] immunity if he commits an intentional tort"). In spite of these holdings, Houghton asks us to apply this immunity to officials committing intentional torts. But this Court will not overturn precedent in a vacuum, nor do so on a whim. *See, e.g., Townsend v. Bethlehem–Fairfield Shipyard, Inc.,* 186 Md. 406, 417, 47 A.2d 365, 370 (1946) ("[I]t is a well recognized and valuable doctrine that decisions, once made ... should not thereafter be lightly disturbed or set aside....").

412 Md. at 585–586, 989 A.2d 223 (footnotes omitted).

 Thus, the distinction between torts that are shielded by qualified immunity and torts that are not shielded by

---

7. Forrest also argued, in the alternative, that her evidence of malice was sufficient, *id.* at 584, 989 A.2d 223, but the Court of Appeals did not reach that issue.

qualified immunity is "intent." Coincidentally, this is precisely the distinction between "actual" and "constructive" fraud. Actual fraud is an intentional tort. *Gross v. Sussex, Inc.*, 332 Md. 247, 260, 630 A.2d 1156 (1993) ("Thus, fraud is an intentional tort requiring the defendant to know that his or her representation is false.... This means the representation was made either knowingly or in conscious disregard of its truth."). By contrast, the plain holding in *Canaj*, cited above, 391 Md. 374, 421–22, 893 A.2d 1067, is that constructive fraud is *not* an intentional tort. In fact, appellant's brief cites the same case as the *Canaj* opinion on that very point. In *Jannenga v. Johnson*, 243 Md. 1, 5, 220 A.2d 89 (1966), the Court of Appeals held:

> A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty....

██ Therefore, even assuming the truth of all allegations set forth in appellant's complaint, and any reasonable inferences to be drawn therefrom, appellees are shielded from liability for constructive fraud as a matter of law.

██ Appellant is thus left with only one claim to which appellees may not be immune: actual fraud.[8] To prevail on a claim for fraud, a plaintiff must show: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff

---

**8.** Coincidentally, the *Jannenga* Court anticipated the allegations *sub judice* in footnote two of its opinion: "An example of actual fraud in the conduct of the proceedings in this case could have been that of filing a false affidavit of compliance ... where no compliance had in fact been effectuated." 243 Md. at 4 n. 2, 220 A.2d 89.

suffered compensable injury resulting from the misrepresentation. *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769 (2008) (citations omitted).

 Appellees' only remaining response to appellant's fraud claim is based in fact and founded on affidavits attached to its motion to dismiss. As discussed at the outset of our opinion, the court based its decision on the legal sufficiency of appellant's claims and granted a motion to dismiss. As such, the court could not have properly considered appellees' exhibits when it granted their motion to dismiss.[9] For the forgoing reasons, appellees could not establish that appellant's alleged facts and permissible inferences would not afford her relief for actual fraud; therefore, the court erred when it dismissed appellant's complaint.

**JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS IN THE CIRCUIT COURT FOR HARFORD COUNTY, CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 75% BY APPELLANT AND 25% BY APPELLEE.**

---

9. As noted, *supra*, Rule 2–322(c) would require the trial court to treat the motion to dismiss as one for summary judgment if it intended to rely on matters outside the pleadings and, here, the trial court did not do that.